Filed 2/18/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>RAHEEN JOHNSON,<br><br>    Defendant and Respondent. | D075097<br><br>(Super. Ct. No. PLBG5391) |

APPEAL from an order of the Superior Court of San Diego County, Kathleen M. Lewis, Judge. Affirmed.

Summer Stephan, District Attorney, Mark A. Amador, Chief Deputy District Attorney, Linh Lam and Elizabeth M. Renner, Deputy District Attorneys, for the Plaintiff and Appellant.

Angela Bartosik, Chief Deputy Primary Public Defender, and Shannon L. Kitten, Deputy Public Defender, for Defendant and Respondent.

In this parole revocation proceeding, the People appeal from the trial court's order (1) granting Raheen Johnson's motion to dismiss the petition to revoke parole filed by the

Division of Adult Parole Operations of the California Department of Corrections and Rehabilitation (DAPO); and (2) transferring Johnson from parole supervision to postrelease community supervision (PRCS). The People, through the San Diego County District Attorney, appeal from the trial court's order, contending, among other things, that the trial court did not have the authority, in the context of a parole revocation proceeding, to transfer Johnson's supervision to PRCS. According to the People, a parolee may challenge his classification as an offender subject to parole supervision only by exhausting his administrative remedies with the California Department of Corrections and Rehabilitation (CDCR) and then, if necessary, filing a petition for writ of habeas corpus. The People also contend that even if the trial court had authority to transfer Johnson to PRCS, the transfer was barred by Penal Code section 3000.08, subdivision (l), which permits a transfer to PRCS only if the parolee has not yet served 60 days on parole supervision.[1] As we will explain, we conclude that the trial court had the authority to transfer Johnson's supervision to PRCS, and further that the trial court properly concluded that the transfer was not barred by the 60-day time limit in section 3000.08, subdivision (l). We accordingly affirm the trial court's order.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On January 17, 2018, Johnson was convicted of possessing child pornography (§ 311.11, subd. (a)) and was sentenced to a 16-month prison term. Johnson was released

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2

to parole supervision on July 25, 2018, with a parole discharge date of July 24, 2021. Because of Johnson's conviction for possessing child pornography, he was required to register as a sex offender (§ 290, subd. (c)), and the conditions of Johnson's parole included numerous special conditions related to sex offenders and required that he wear a GPS monitoring device. (§ 3008, subd. (a) [requirement of "intensive and specialized parole supervision" for high risk sex offenders]; § 3010.10 [as a condition of parole, a person required to register as a sex offender is required to be monitored by a GPS monitoring device].)

On August 2, 2018, DAPO filed a petition to revoke Johnson's parole, alleging Johnson violated the terms and conditions of parole by (1) violating his curfew; (2) entering a private residential property without permission of his parole officer; (3) entering or loitering within 250 feet of the perimeter of places where children congregate; and (4) failing to properly charge his GPS device. Johnson was arrested for the parole violations on July 27, 2018, two days after his release from prison.

On August 3, 2018, Johnson admitted that he violated the terms of his parole, and he accepted an offer of 90 days in jail as a sanction. Johnson was released from jail on September 10, 2018.

DAPO filed a second petition to revoke Johnson's parole on September 18, 2018. According to the petition, Johnson violated the terms and conditions of his parole by (1) absconding from parole supervision by failing to report to his parole officer within 24 hours of his release from jail; (2) failing to comply with GPS monitoring because he failed to report to his parole officer within 24 hours to have a GPS device affixed; and

3

(3) providing a false name to a police officer who detained him for failing to have valid trolley fare. Johnson was arrested for the parole violations on September 12, 2018, two days after his release from jail. DAPO recommended that the trial court return Johnson to custody for the maximum permitted period of 180 days. (§ 3000.08, subd. (g).)

On September 19, 2018, Johnson filed a form rejecting DAPO's offer of disposition and requesting an evidentiary hearing ("the offer and waiver form"). The offer and waiver form stated that Johnson was "challenging jurisdiction" and requested that his parole officer and a representative of CDCR be present at the evidentiary hearing "regarding [his] Static 99 Score." A minute order from a September 19, 2018 hearing, at which counsel for Johnson appeared and at which a parole officer was present, also reflects Johnson's request that the parole officer and a representative of CDCR be present at a future evidentiary hearing concerning his "Static 99 score."

On October 30, 2018, Johnson filed a motion to dismiss DAPO's petition to revoke parole. In that motion Johnson asserted that DAPO lacked jurisdiction over him because, under the applicable standards, he should have been placed on PRCS to be supervised by the county probation department (§ 3450 et seq.), rather than released on parole to be supervised by the state's DAPO.

To understand the basis for Johnson's motion to dismiss, the following background is necessary.

"A defendant sentenced to state prison is subject to a mandatory period of supervision following release, either parole supervision by the state (§ 3000 et seq.), or postrelease community supervision by a county probation department (§ 3450 et seq.)."

4

(*People v. Cruz* (2012) 207 Cal.App.4th 664, 672.)  Parole supervision applies only to certain categories of persons, including, as relevant here, persons released from prison after serving a prison term for "[a]ny crime for which the person is classified as a high-risk sex offender."  (§ 3000.08, subd. (a)(4).)[2]  Unless a defendant is required by statute to be released on parole, "all other offenders released from prison shall be placed on [PRCS]."  (§ 3000.08, subd. (b).)

"The Legislature has not defined the term high-risk sex offender as used in section 3000.08, subdivision (a)(4).  But CDCR has defined the term in [a] regulation (Cal. Code Regs., tit. 15, § 3582, subd. (a)) and its written sex offender management policy.  CDCR has determined a sex offender with a Static-99R score of four or greater is designated as a high-risk sex offender and therefore subject to parole supervision."  (*People v. Toussain* (2015) 240 Cal.App.4th 974, 983-984 (*Toussain*).)  The Static-99R is "an actuarial instrument that calculates a defendant's risk of reoffense based on the

---

[2]     Parole supervision is also required for persons released from prison after serving a prison term for "(1) A serious felony as described in subdivision (c) of Section 1192.7.  [¶]  (2) A violent felony as described in subdivision (c) of Section 667.5.  [¶]  (3) A crime for which the person was sentenced pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12.  [¶] . . . [¶]  (5) Any crime for which the person is required, as a condition of parole, to undergo treatment by the State Department of State Hospitals pursuant to Section 2962."  (§ 3000.08, subd. (a).)  Subdivision (i) of section 3000.08 sets forth two additional categories of persons subject to parole supervision.  These are:  "(1) The person is required to register as a sex offender pursuant to Chapter 5.5 (commencing with Section 290) of Title 9 of Part 1, and was subject to a period of parole exceeding three years at the time he or she committed a felony for which they were convicted and subsequently sentenced to state prison; [¶]  (2) The person was subject to parole for life pursuant to Section 3000.1 at the time of the commission of the offense that resulted in a conviction and state prison sentence."  (§ 3000.08, subd. (i).)

5

number of sex offenses, sentencing dates, and convictions for nonsexual violence" and that "also takes into account the defendant's age at the time of evaluation and whether any sex offenses were against unrelated victims or strangers." (*People v. Roa* (2017) 11 Cal.App.5th 428, 437 [describing predecessor Static-99].)[3]

On June 21, 2018, prior to Johnson's release from prison, CDCR evaluated Johnson using the Static-99R and assigned him a score of four, which classified Johnson as a high risk sex offender. As a result of the Static-99R score, CDCR determined that Johnson should be placed on parole supervision when he was released from prison. There is no evidence in the record that Johnson was informed of his Static-99R score or the reason for being placed on parole supervision.

In the course of representing Johnson on the second petition to revoke parole, counsel for Johnson obtained records from CDCR, including Johnson's Static-99R scoring sheet. After receiving the records on September 20, 2018, counsel concluded that CDCR had assigned an incorrect Static-99R score to Johnson. On behalf of Johnson, counsel sent an appeal to CDCR on the required form by mailing it on September 21, 2018. In a second level review, CDCR partially granted and partially denied the appeal in a decision dated October 12, 2018, which Johnson received on October 23, 2018. Specifically, CDCR determined that based on subsequently obtained information about Johnson's criminal history—showing no "prior sex offense charges"—Johnson's score on

---

3       The Static-99R has been described as an "update" to the Static-99. (*Toussain*, *supra*, 240 Cal.App.4th at p. 982.)

the Static-99R should have been two, which meant that he was not a high risk sex offender required to be released to parole supervision rather than to PRCS.[4]

However, despite CDCR's acknowledgment that Johnson was not a high risk sex offender, CDCR concluded that Johnson was required to remain on parole supervision, rather than being transferred to PRCS, because he had already served more than 60 days on parole supervision since his release from prison on July 25, 2018. CDCR cited section 3000.08, subdivision (l) which states, "Any person released to parole supervision pursuant to subdivision (a) [governing parole supervision] shall, regardless of any subsequent determination that the person should have been released pursuant to subdivision (b) [governing PRCS], remain subject to subdivision (a) *after having served 60 days under supervision* pursuant to subdivision (a)." (Italics added.) Noting that it received Johnson's appeal on September 24, 2018, which was 61 days after Johnson was released from prison on July 25, 2018, CDCR informed Johnson that he had "served 60 days of parole supervision prior to your score being reassessed," and that he was therefore required to remain under parole supervision. CDCR's decision stated that if

[4] CDCR also addressed another issue raised by Johnson's appeal, namely whether a person convicted only of possession of child pornography as the offense requiring registration as a sex offender should be subject to scoring under the Static-99R. CDCR concluded that it was appropriate to score Johnson under the Static-99R because CDCR is required by statute to assess every prisoner required to register as a sex offender. (§§ 290.04, 290.06) Although Johnson argues in his appellate briefing that the Static-99R does not apply to him, we need not reach that issue here, as it is undisputed by the parties that even under the Static-99R, Johnson is not properly classified as a high risk sex offender required to be placed on parole supervision upon release from prison.

7

Johnson was dissatisfied with the result, he could submit the appeal for a third level review within the relevant timeframe.[5]

Johnson filed his motion to dismiss the parole revocation petition in the trial court after receiving CDCR's decision. Johnson argued that DAPO's petition to revoke parole "should be dismissed based on parole improperly exercising jurisdiction over Mr. Johnson." He also requested that the trial court terminate parole and order him to report to PRCS supervision.

In arguing that DAPO did not have jurisdiction over him, Johnson relied on the portion of CDCR's decision establishing that it had erroneously determined that he was a high risk sex offender who was required to be placed on parole supervision when released from prison. Johnson took issue with the second portion of CDCR's decision, namely that Johnson was required to remain on parole pursuant to section 3000.08, subdivision (l) because he had served more than 60 days under parole supervision when his Static-99R score was reassessed.

Johnson challenged CDCR's reliance on section 3000.08, subdivision (l) on several grounds. First, Johnson argued that the 60-day rule was unconstitutionally vague as written and should not be enforced because "a reasonable person of ordinary intelligence would not be put on notice as to how the calculation of '60 days under

_____

[5]     The record contains no information about whether Johnson pursued a third level administrative appeal. We note that the trial court granted relief to Johnson less than 30 days from the time that Johnson received the CDCR's decision, and thus prior to the expiration of the 30-day deadline for filing a third level administrative appeal. (Cal. Code Regs., tit. 15, § 3084.8, subd. (b).)

supervision' is made." Among other things, Johnson argued "the statute does not elaborate on whether a challenge to the classification under [p]arole must be initiated within the 60 days, or whether a final determination must be made within 60 days." Next, Johnson argued that to allow a defendant a meaningful opportunity to exercise his right to due process to challenge his classification, the statute should be interpreted to mean that a parolee is required to *initiate* a challenge to his or her placement on parole before having served 60 days on parole, not that relief must be granted within the 60-day period. According to Johnson, under this interpretation of the statute, there were two independent approaches to concluding that he *initiated* his challenge within the 60-day period. First, Johnson raised a challenge to his Static-99R score and DAPO's jurisdiction on September 19, 2018 (within the 60-day period) when he filed the offer and waiver form and defense counsel appeared in court, with a parole officer present, giving notice that Johnson was challenging DAPO's jurisdiction over him. Second, although CDCR did not receive Johnson's appeal until September 24, 2018, which was 61 days after he was released on parole, the appeal was *postmarked* on September 21, 2018, which was within the 60-day period. (See *In re Andres* (2016) 244 Cal.App.4th 1383, 1396 [a prisoner's administrative appeal was timely based on when it was mailed to the appeals coordinator via institutional mail].) In addition, Johnson contended that the 60-day period in section 3000.08, subdivision (l) should be tolled by the time that he spent in custody on his parole violations, citing section 3000, subdivision (b)(6), which states that "[t]ime during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole

9

unless the prisoner is found not guilty of the parole violation".[6] Johnson pointed out that he had served a significant amount of time in jail custody after he was released on parole supervision, which should serve to toll the period he served on parole supervision.

The District Attorney opposed Johnson's motion. She argued that "whether or not Mr. Johnson should or should not be placed on parole supervision is within the sole discretion of CDCR" and that "[a]ny challenges to placement on parole must be made to the CDCR." The District Attorney took the position that the trial court "is statutorily prohibited from terminating Mr. Johnson's parole and lacks jurisdiction to terminate his term of parole for any reason." Johnson's proper remedy, according to the District Attorney, was to exhaust his administrative remedies with the CDCR and then to file a petition for writ of habeas corpus challenging his continued placement on parole.

At a hearing held on November 15, 2018, the trial court granted the relief sought by Johnson. As an initial matter, the trial court rejected the District Attorney's contention that the court lacked authority to grant relief to Johnson. Specifically, the trial court concluded that based on section 3000.08, which gives jurisdiction to the court to hear petitions to revoke parole, the court had the authority to hear a motion to dismiss the

6       CDCR's decision on Johnson's appeal did not expressly address the tolling issue, although in calculating how long Johnson had served on parole it counted all of the days that Johnson spent in jail custody as time that Johnson served on parole. We note also that DAPO applied section 3000, subdivision (b)(6) in determining Johnson's revised parole expiration date after he served a term in custody for the first parole violation. Specifically, DAPO's second petition to revoke probation indicates that due to Johnson's time in custody as a result of his first parole violation, his parole expiration date was advanced to September 7, 2021, adding 45 days to the original parole expiration date of July 24, 2021 due to the 45 days he spent in jail custody.

10

petition on the ground that DAPO lacked jurisdiction over the parolee. Characterizing this issue as whether it had "jurisdiction" to hear the motion, the trial court stated, "As far as jurisdiction is concerned, I'm going to find that the court has jurisdiction to hear the defense motion."[7] The trial court explained that under the applicable law, "it's set for courts as far as a determination as [to] whether or not a defendant is in violation of their parole or probation supervision, and the People are asking the Court . . . to find that there was a violation of a parole condition. In the Court's view, if Mr. Johnson is not lawfully under the jurisdiction of parole, there cannot be a violation of the terms of parole because there is no lawful jurisdiction in parole." The trial court further observed that the issue of its authority was not expressly addressed in any applicable statute, as none of the relevant

_____

[7]      We note that in addressing whether the trial court had the authority to dismiss the parole revocation petition and transfer Johnson to PRCS, the parties (and the trial court) refer to the issue as presenting a *jurisdictional* question. "The term 'jurisdiction,' 'used continuously in a variety of situations, has so many different meanings that no single statement can be entirely satisfactory as a definition.' . . . Essentially, jurisdictional errors are of two types. 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' . . . [¶] However, 'in its ordinary usage the phrase "lack of jurisdiction" is not limited to these fundamental situations.' . . . It may also 'be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' " (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660-661, citations omitted].) Here, the trial court clearly had authority over the subject matter of a petition to revoke parole, as conferred by statute (§§ 1203.2, subd. (b); 3000.08, subd. (f)), and thus had subject matter jurisdiction. Accordingly, when the parties refer to jurisdiction here, they are specifically debating whether the court had the power to grant *a particular kind of relief* in a parole revocation proceeding. For the sake of clarity, because of the differing meanings of "jurisdiction," we will refer to the issue as whether the trial court had the *authority* to grant relief to Johnson by transferring him to PRCS, not whether the trial court had jurisdiction to do so.

statutes "indicate that the Court can or cannot terminate parole if parole is not the lawfully correct supervising agency."

Having found that it had the authority to consider the matter, the trial court then turned to the merits of Johnson's motion, beginning with a summary of the relevant undisputed facts. As the trial court noted, "Mr. Johnson was erroneously scored on the Static-99 as a high-risk sex offender prior to release from prison, and the parties all agree [but for] that classification he would have been released to PRCS versus parole." The trial court observed, "All parties also agree if the error had been corrected and the defendant had been reassessed prior to the 60 days of supervision elapsing, presumably up to 60 days[,] that CDCR itself would have transferred jurisdiction to the supervision of probation."

The trial court then explained that based on its interpretation of the 60-day period described in section 3000.8, subdivision (l), Johnson was not barred from being transferred from parole to PRCS on the ground that he had already served 60 days under parole supervision. The trial court ruled that the triggering date for calculating whether someone is within the 60-day time period for being transferred from parole to PRCS "is not the date that CDCR performs a reassessment nor the date of receipt of the challenge to jurisdiction[,] but rather the date that the form in this case was postmarked, which was the 58th day." The court found "that defense counsel acted with due diligence in completing and mailing the form within the 60-day time frame and that service of the appeal was proper and in compliance with Penal Code Section 3000.08(l) as written." The court also noted it was arguable that the 60-day period should be calculated based on

12

the date that Johnson first gave notice in court that he was challenging DAPO's jurisdiction (Sept. 19, 2018), which was 56 days after he was released to parole supervision. However, because using the date that the appeal to CDCR was postmarked also resulted in a challenge within the 60-day period, the court did not expressly decide that issue. Nor did the trial court decide whether the time that Johnson spent in jail custody due to his parole violations should be counted as part of the time that he served on parole supervision.

The trial court ordered that Johnson's supervision be transferred from parole to PRCS, and it dismissed DAPO's petition to revoke parole. The court stated that "[p]arole is terminated by virtue of the transfer," but it ordered Johnson to continue to report to his parole officer until the transfer to PRCS was effectuated. The trial court denied the People's request to stay its order pending appeal.

The District Attorney filed a notice of appeal from the order dismissing the petition to revoke parole and transferring Johnson to PRCS.

II.

DISCUSSION

A. *The Trial Court's Authority to Transfer a Parolee to PRCS*

As the trial court recognized, the initial issue is whether, in a proceeding to revoke parole initiated by DAPO, the trial court has the authority to consider and act upon the parolee's contention that he was improperly placed on parole and that he should be transferred to PRCS. The People contend that the trial court did not have authority to hear Johnson's challenge to his placement on parole supervision because the relevant

13

statutes confer "only limited jurisdiction over parole revocation hearings to the superior court," and "[t]he power to place a sex offender on parole or PRCS is vested in the CDCR by the Legislature, and the trial court does not have jurisdiction to alter it." Further, the People contend that "the statutes governing parole explicitly prohibit the superior court from terminating parole supervision." Finally, the People argue that "parolee challenges to administrative classifications are appropriately brought via a petition for writ of habeas corpus, not through parole revocation hearings."

1.    *The Trial Court's Role in Parole Revocation Proceedings*

To address the issue of the trial court's authority to transfer Johnson to PRCS as part of a parole revocation proceeding, we first review the relevant law.

"PRCS was created as part of the 2011 Criminal Justice Realignment Act (Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 1) [the Realignment Act or "realignment"], which 'changed the paradigm for the incarceration and postconviction supervision of persons convicted of certain felony offenses.' [Citation] 'In the wake of realignment, a person released from prison is subject to a period of either parole (§ 3000 et seq.) or postrelease community supervision (§ 3450 et seq.). [Citation.] Parole applies to high-level offenders, i.e., third strikers, high risk sex offenders, and persons imprisoned for serious or violent felonies or who have a severe mental disorder and committed specified crimes. (§ 3451, subd. (b).) All other released persons are placed on postrelease community supervision. (§ 3451, subd. (a).)' " (*People v. Steward* (2018) 20 Cal.App.5th 407, 417.)

14

The parties have not identified any statute specifically stating that CDCR has the responsibility for determining, based on the applicable legal standards and the particular circumstances of the prisoner, whether a prisoner to be released to post-incarceration supervision is to be assigned to parole supervision or to PRCS.[8]  However, it is undisputed that CDCR performs the role of deciding the post-release classification of inmates who are being released from prison.[9]  Further, as we have explained, after

_____

[8]    In *People v. Tubbs* (2014) 230 Cal.App.4th 578, the court examined whether any express statutory provision gave CDCR the *sole* authority to decide whether a defendant should be placed on PRCS.  *Tubbs* concluded that "[t]here is nothing in the [Realignment] Act stating [CDCR] determines whether a defendant is subject to PRCS." (*Id*. at p. 586.)  After reviewing the relevant statutes, we reach the same conclusion concerning parole.  There is nothing in the Realignment Act stating that CDCR determines whether a defendant is required to be released on parole supervision rather than PRCS.  The People point out that CDCR is required by statute to administer the Static-99R to all adult male inmates required to register as sex offenders.  (§§ 290.04, 290.06.)  According to the People, CDCR's role in administering the Static-99R shows that the Legislature determined during realignment that CDCR should decide whether an inmate is a high risk sex offender required to be supervised on parole.  Although we understand the People's argument, we note that the provision requiring CDCR to perform a Static-99R analysis existed prior to the Realignment Act (§§ 290.04 [added by Stats. 2006, ch. 337 (Sen. Bill 1128), § 13, eff. Sept. 20, 2006]; 290.06 [added by Stats. 2006, ch. 337 (Sen. Bill 1128), § 15, eff. Sept. 20, 2006]), and thus that provision does not directly indicate the role that the Legislature intended CDCR to perform after realignment in deciding whether to release an inmate to parole supervision or PRCS.

[9]    Certain administrative and statutory provisions demonstrate that, as a practical matter, CDCR performs the function of determining whether an inmate will be released on parole supervision or PRCS.  (See Cal. Department of Corrections and Rehabilitation Operations Manual, ch. 8, art. 1, p. 674 (Jan. 1, 2019) <https://www.cdcr.ca.gov/ regulations/wp-content/uploads/sites/171/2019/07/Ch_8_2019_DOM.pdf? label=Chapter%208%20Adult%20Parole%20Operations&from=https://www.cdcr.ca.gov /regulations/adult-operations/dom-toc/> [as of Feb. 18, 2020], archived at <https://perma.cc/EXU5-T6K6> ["DAPO staff shall prioritize screening of direct release cases to determine Post Release Community Supervision (PRCS).  The unit supervisor or assistant unit supervisor shall review the certified court documents to determine if the

CDCR releases an inmate to parole supervision, section 3000.08, subdivision (l) sets a time limit on a transfer between parole and PRCS in the event it is discovered that CDCR erroneously assigned a person to parole supervision. Under that provision, "Any person released to parole supervision . . . shall, regardless of any subsequent determination that the person should have been released pursuant to [the provision governing PRCS], remain subject to [parole supervision under] subdivision (a) after having served 60 days under [parole] supervision pursuant to subdivision (a)." (§ 3000.08, subd. (l), italics added.)

"Historically, [the Board of Parole Hearings] was responsible for conducting parole revocation hearings. . . . Under the Realignment Act, jurisdiction over most petitions to revoke parole shifted to the superior courts. (§ 3000.08, subds. (a), (f), added by Stats. 2011, ch. 39, § 38 [Assem. Bill No. 117]; amended by Stats. 2012, ch. 43, § 35 [Sen. Bill No. 1023].) In 2012 the Legislature amended section 1203.2 to incorporate parole into the statutes governing revocation of probation, mandatory supervision, and postrelease community supervision. (§ 1203.2, subds. (a), (b)(1), (f)(3)(E), as amended by Stats. 2012, ch. 43, § 30 [Sen. Bill No. 1023].) . . . [¶] Together, sections 1203.2 and

commitment offense meets criteria for PRCS supervision, as described in PC Sections 3000.08 and 3451. If applicable, the Static-99R score or FSORA shall be reviewed to determine if the offender meets the criteria for designation as a High Risk Sex Offender"]; Cal. Code Regs., tit. 15, § 3079.1 [CDCR regulations setting forth criteria making an inmate ineligible for release to PRCS]; § 3000, subd. (b)(7) [stating that CDCR "shall meet with each inmate at least 30 days prior to his or her good time release date and shall provide . . . the conditions of parole and the length of parole"]; § 3451, subd. (c)(2) [CDCR shall inform every prisoner subject to PRCS about its requirements].)

16

3000.08 establish a statutory framework for parole revocation." (*People v. DeLeon* (2017) 3 Cal.5th 640, 647 (*DeLeon*).)

"A parolee may be arrested, with or without a warrant, based on probable cause to believe that a parole violation has occurred. (§§ 1203.2, subd. (a), 3000.08, subd. (c).) The supervising parole agency determines if there is good cause to believe the subject has violated parole, and may impose intermediate sanctions, including 'flash incarceration' for up to 10 days. (§ 3000.08, subds. (d), (e).) If intermediate sanctions are not appropriate, the parole agency must petition the superior court to revoke parole, and provide notice to the parolee. (§§ 1203.2, subd. (b), 3000.08, subd. (f).) Jurisdiction lies 'in the county in which the parolee is released, resides, or in which an alleged violation of supervision has occurred.' (§ 3000.08, subd. (a); see also § 1203.2, subd. (b)(1).) The court may modify or revoke parole if the interests of justice so require. (§ 1203.2, subd. (b); § 3000.08, subd. (f).) In so doing, the court may order the parolee to serve up to 180 days in jail. (§ 3000.08, subds. (f)(1), (2), (g).)" (*DeLeon*, *supra*, 3 Cal.5th at p. 647.)[10]

Prior to realignment, "[t]he executive branch ha[d] 'inherent and primary authority' over parole matters." (*In re Roberts* (2005) 36 Cal.4th 575, 588.) But after realignment that is no longer the case for matters arising in parole revocation proceedings. (*DeLeon*, *supra*, 3 Cal.5th at p. 649 ["[w]hile the courts handle most revocation hearings

---

[10] We note that different rules apply when the trial court finds a violation of parole conditions or violation of law by a defendant who is on parole for a life term or for a 20 year, six month term for committing certain sex crimes against a minor under 14 years of age. (§§ 3000.08, subd. (h), 3000.1, 3000, subd. (b)(4).) Those defendants must be remanded to prison. (§ 3000.08, subd. (h).)

17

postrealignment, they do not act as the 'state's parole authority' in other respects, including determining parole suitability and setting parole release dates"].)

Sections 1203.2 and 3000.08 detail the extent of the trial court's authority in parole revocation proceedings. Specifically, section 1203.2, pertains to proceedings relating to persons on several different types of supervision (i.e., probation, parole, PRCS and mandatory supervision). As relevant here, the statute states, "Upon its own motion or upon the petition of the supervised person, the probation or parole officer, or the district attorney, the court may modify, revoke, or terminate supervision of the person pursuant to this subdivision, except that the court shall not terminate parole pursuant to this section. . . . A person supervised on parole or postrelease community supervision pursuant to Section 3455 may not petition the court pursuant to this section for early release from supervision, and a petition under this section shall not be filed solely for the purpose of modifying parole. This section does not prohibit the court in the county in which the person is supervised or in which the alleged violation of supervision occurred from modifying a person's parole when acting on the court's own motion or a petition to revoke parole." (§ 1203.2, subd. (b)(1).) Section 3000.08, subdivision (f) more specifically sets forth the authority of the trial court upon finding a violation in a parole revocation proceeding initiated under section 1203.2: "Upon a finding that the person has violated the conditions of parole, the court shall have authority to do any of the following: [¶] (1) Return the person to parole supervision with modifications of conditions, if appropriate, including a period of incarceration in a county jail. [¶] (2) Revoke parole and order the person to confinement in a county jail. [¶] (3) Refer the

18

person to a reentry court pursuant to Section 3015 or other evidence-based program in the court's discretion."

2.  *The Trial Court Acted Within Its Authority in Transferring Johnson to PRCS*

We next turn to an evaluation of the parties' arguments concerning the scope of the trial court's authority in a parole revocation proceeding to order a defendant transferred from parole supervision to PRCS.  The People rely primarily on statutory language; Johnson relies on case law.

a.  *The Statutory Language Cited by the People Does Not Expressly Bar an Order Transferring a Defendant to PRCS*

The People contend that the statutory language of section 1203.2, subdivision (b)(1) expressly prohibits the trial court from transferring Johnson from parole supervision to PRCS.  Characterizing the trial court's decision as an order *terminating* Johnson's parole, the People rely on the language in section 1203.2, subdivision (b)(1), which states that "the court shall not terminate parole pursuant to this section."  "In interpreting a statutory provision, 'our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results.' "  (*Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1385.)  Although we understand the People's argument, we do not find it to be persuasive.  In our view, it is unlikely that the Legislature intended that language to prohibit the trial court from transferring someone from parole supervision to PRCS when CDCR has made a mistake in classifying the

19

person. Instead, when read in context, the language appears intended to prohibit the trial court from terminating parole as a *sanction* for violating the conditions of parole.

As we will explain, we base this conclusion on two aspects of the relevant statutory scheme. In so doing, we follow the rule that in construing a statute " '[t]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357.)[11]

First, in determining the meaning of the statement that "the court shall not terminate parole pursuant to this section," we look to identical language appearing in subdivision (a) of section 1203.2, which was added to the statute at the same time as the language in subdivision (b). (Stats. 2012, ch. 43, § 30 [Sen. Bill No. 1023].) " 'It is presumed, in the absence of anything in the statute to the contrary, that a repeated phrase or word in a statute is used in the same sense throughout.' " (*People v. Jones* (1988) 46

---

[11] The People also cite *People v. VonWahlde* (2016) 3 Cal.App.5th 1187, which decided that the trial court lacked the authority to terminate parole. However, *VonWahlde* is inapposite because it decided a different issue. Specifically, in *VonWahlde*, when the defendant was sentenced to prison for a new crime he committed while on parole, the trial court decided that it would serve no purpose to keep defendant on parole while he was in prison serving a sentence for the new crime. (*Id*. at pp. 1191-1193.) The trial court accordingly entered an order under section 1385, subdivision (a), terminating parole "in the interest of justice." (*Id*. at p. 1193.) *VonWahlde* decided that the trial court did not have authority to take action under section 1385, subdivision (a) because "[a] period of parole is not a criminal action or a part thereof as contemplated by section 1385." (*Id*. at p. 1197.) *VonWahlde* did not decide the issue presented here, namely whether in a parole revocation proceeding a trial court has the authority to transfer a defendant to PRCS.

Cal.3d 585, 595.) Subdivision (a) of section 1203.2 gives the trial court the authority to make certain orders when a person is arrested for violating the conditions of supervision. Specifically, "Upon rearrest, or upon the issuance of a warrant for rearrest, the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of their supervision, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless of whether the person has been prosecuted for those offenses. *However, the court shall not terminate parole pursuant to this section*." (§ 1203.2, subd. (a), italics added.) Examining the above-quoted language in subdivision (a) it is clear that by stating that "the court shall not terminate parole pursuant to this section," the Legislature intended to establish that the court may not terminate parole as a *sanction* for the parolee's violation of the conditions of parole or commission of other bad acts. Specifically, subdivision (a) describes the sanctions the court is authorized to order when a supervised person violates the conditions of supervision or commits bad acts (i.e., revocation or termination of supervision), but states that the court "shall not terminate parole" in such a situation. Subdivision (b)(1) of section 1203 uses the identical statutory language used in subdivision (a), stating that "the court shall not terminate parole pursuant to this section." Because of the proximity of subdivisions (a) and (b)(1), and their use of identical language, it is likely that the Legislature intended to set forth the same proscription in subdivision (b)(1) as in

21

subdivision (a), namely that the court shall not terminate parole as a *sanction* for violation of the conditions of parole.

Second, in concluding that the phrase "shall not terminate parole" in section 1203.2, subdivision (b) refers to a termination of parole as *a sanction* for a parole violation, we rely on other statutory provisions indicating that in enacting realignment the Legislature was concerned with preventing *the return to prison* of a parolee. Initially, we note that an order terminating parole as a sanction for a parole violation would mean a return of the parolee to prison because he has not been successful on parole. However, as part of realignment the Legislature decided to provide that sanction only for a very limited class of parolees. Specifically, only a defendant who is on parole for a life term (§ 3000.1) or for a 20-year, six month term for committing certain sex crimes against a minor under 14 years of age (§ 3000, subd. (b)(4)) is required to be returned to prison when a trial court finds that the defendant has violated the law or the conditions of parole. (§ 3000.08, subd. (h) [upon a violation, "the person on parole shall be remanded to the custody of [CDCR] and the jurisdiction of the Board of Parole Hearings for the purpose of future parole consideration"].) Except for those cases, section 3000.08 provides that the most extreme custody-related sanction the trial court may issue for a parole violation is confinement *in county jail* for up to 180 days. (§ 3000.08, subd. (f)(2).) Similarly, as part of realignment the Legislature provided that, in general, "[p]risoners on parole shall remain under the supervision of the department but *shall not be returned to prison*." (§ 3056, subd. (a), italics added.) In light of the statutory provisions precluding the trial court from returning most categories of parolees to prison, it is reasonable to understand

22

the statement in section 1203.2, subdivision (b)(1) that the trial court "shall not terminate parole" as an additional provision precluding the court from returning a parolee to prison *as a sanction* for a parole violation.[12]

          b.     *The Case Law Cited By Johnson Is Not Dispositive of the Trial Court's Authority to Transfer a Defendant from Parole Supervision to PRCS*

Having rejected the People's contention that section 1203.2, subdivision (b) expressly *precludes* a trial court in a parole revocation proceeding from transferring a defendant from parole supervision to PRCS because of the language "the court shall not terminate parole pursuant to this section," we turn to Johnson's contention that certain case law expressly *permits* an order transferring a defendant to PRCS.

First, Johnson relies on *Toussain*, *supra*, 240 Cal.App.4th 974, in which the trial court dismissed a petition for revocation of parole and transferred the defendant from parole to PRCS, just as the trial court did here. (*Id*. at p. 978.) Specifically, in *Toussain* the trial court granted relief after concluding that CDCR mistakenly misclassified the defendant as a high risk sex offender based on a previous sex crime, rather than his

---

[12]    We accordingly agree with the trial court's interpretation of the statutory language, which it understood to prohibit termination of parole as a consequence of a parole violation.  As the trial court explained, under section 1203.2, subdivision (b)(1), "the Court has no authority to terminate parole if, and I emphasize the word if, the Court has determined there is a violation.  If the Court doesn't determine there is a violation because the Court doesn't believe there is jurisdiction, I don't think that that is the same type of situation that they are referring to."  The trial court also properly observed that Johnson was "essentially asking for a transfer of supervision, a transfer of jurisdiction to probation, and although that necessarily results in a termination of parole supervision or discharge or whatever you want to call it, it's not a termination of all supervision, which I think was the intent of that language."

23

current commitment offense. (*Id*. at pp. 978, 984.) On appeal, *Toussain* concluded that, contrary to the trial court's conclusion, CDCR had properly classified the defendant as a high risk sex offender subject to parole supervision. However, *Toussain* expressly declined to address whether the trial court would have had authority to grant relief if the defendant had been misclassified. "We express no opinion on the general or specific misclassification issues, *or what remedy a parolee might have to correct an improper classification* because these issues were not addressed below." (*Id*. at p. 984, italics added.) Therefore, *Toussain* does not address the issue presented in this appeal.

Next, Johnson relies on *People v. Austin* (2019) 35 Cal.App.5th 778. In *Austin*, a parolee before the court on a petition to revoke parole challenged a condition of parole he was accused of violating, contending it was unconstitutionally vague and overbroad. The trial court declined to modify or invalidate the parole condition and found the parolee to be in violation of the condition. On appeal, *Austin* concluded that the parole condition was unconstitutionally vague as worded and remanded to the trial court to consider whether to modify it. As an initial matter, *Austin* considered and rejected an argument by the People that the parolee "was required to administratively appeal the [parole] condition and that the proper vehicle, habeas corpus, cannot be pursued until he has exhausted that process." (*Id*. at p. 785.) As *Austin* explained, "The lack of an administrative appeal has no bearing on [parolee's] right to contest the validity of [the parole] condition . . . at his parole revocation hearing." (*Ibid*.) Further, *Austin* pointed out that the trial court erroneously believed that it did not have authority in a parole revocation hearing to modify an unconstitutional condition of parole. (*Id*. at p. 788.) Citing section 3000.08,

24

subdivisions (f) and (g), *Austin* explained that "[a]t a parole revocation hearing, if a court finds a parole violation, it has the option to '[r]eturn the person to parole supervision *with modifications of conditions*, if appropriate' or revoke parole and order confinement up to 180 days." (*Id*. at p. 787.)

Johnson argues that *Austin* is applicable here because it refutes the People's contention that "methods for challenging parole decisions [are] solidly vested in the administrative agencies, not the superior court." We do not find Johnson's citation to *Austin* helpful because *Austin* involved the issuance of *an order modifying the conditions of parol*e—a power that is unambiguously conferred by statute on a trial court considering a parole revocation petition. (§ 3000.08, subd. (f)(1) [trial court considering a parole revocation petition has the authority to order "modifications of conditions"].) This case, in contrast, does not concern the modification of the conditions of parole, and thus presents a different question regarding the trial court's authority than was presented in *Austin*.[13]

---

13    To support the proposition that a trial court has authority to terminate a defendant's parole, Johnson also cites cases where the trial court terminated a defendant from parole upon concluding that the defendant had served his full parole term or that the parole term was unconstitutionally applied. (*In re Torres* (2010) 186 Cal.App.4th 909; *In re Kemper* (1980) 112 Cal.App.3d 434, 436; *Carter v. McCarthy* (9th Cir. 1986) 806 F.2d 1373.) However, because those cases were decided in habeas corpus proceedings prior to realignment they do not address whether, after realignment, the trial court has the authority to terminate parole by transferring a defendant from parole to PRCS in a parole revocation proceeding.

c.       *The Trial Court May Transfer a Defendant to PRCS Based on Its Authority to "Modify . . . Supervision of the Person"*

Having considered and rejected the authority upon which the parties rely, we next turn to other statutory language that is dispositive in our analysis.

In our view, the controlling statutory provision here is section 1203.2, subdivision (b)(1), which gives the trial court the authority to "modify . . . supervision of the person."  (§ 1203.2, subd. (b)(1) ["Upon its own motion or upon the petition of the supervised person, the probation or parole officer, or the district attorney, the court may *modify*, revoke, or terminate *supervision of the person* pursuant to this subdivision," italics added].)  Other than the proscription against termination of parole (which we have concluded applies only to termination of parole *as a sanction*), the only statutory limitation on the court's authority to modify supervision is that "[a] person supervised on parole or [PRCS] . . . may not petition the court pursuant to this section *for early release from supervision*."  (§ 1203.2, subdivision (b)(1), italics added.)  A transfer from parole supervision to PRCS is not an *early release* from supervision because the person *is still under supervision*.  Only the *type* of supervision has changed.  Thus, we interpret the trial court's authority to "modify . . . supervision of the person" to encompass the remedy granted by the trial court here, namely an order *modifying supervision* by transferring supervision from parole to PRCS.

The People argue the Legislature did not intend to allow the trial court to modify supervision by transferring a defendant from parole supervision from PRCS because doing so would allow the trial court to intrude on decisions made by CDCR about the

26

type of supervision required for the defendant. However, the statutory provisions enacted as part of realignment show that the Legislature was not concerned with preventing the trial court from reexamining and modifying the initial decisions made by CDCR when releasing an inmate to parole supervision. Significantly, the Legislature gave the trial court broad authority to "modify[] a person's parole" (§ 1203.2, subd. (b)(1)) and to order a "modification of" parole conditions. (§ 3000.08, subd. (f)(1).) The Legislature conferred that authority on the trial court *even though* CDCR unquestionably has the initial role of setting the conditions of parole when an inmate is released from prison on parole supervision (§ 3000, subd. (b)(7)), and the Legislature has given CDCR extensive discretion in setting those conditions. (See, e.g., §§ 3002-3004, 3006, 3008-3010, 3010.5, 3010.8.) In short, although *prior* to realignment courts held that "[i]ntrusions by the judiciary into the executive branch's realm of parole matters may violate the separation of powers" (*In re Prather* (2010) 50 Cal.4th 238, 254), *after* realignment the Legislature has given trial courts the authority to "intrude" on CDCR's initial decisions concerning parole supervision. We accordingly are not persuaded by the People's argument that a trial court does not have the authority to order a defendant transferred from parole supervision to PRCS because such an order would intrude on CDCR's authority to make decisions about the defendant's supervision.[14]

---

14    Further, we note that the placement of an inmate on parole supervision rather than PRCS is *not* a discretionary decision. The law provides that unless the requirements for placement on parole are met, "all other offenders released from prison *shall* be placed on [PRCS]." (§ 3000.08, subd. (b), italics added.) In contrast, many of CDCR's decisions about which conditions of parole to impose are discretionary. (See, e.g., §§ 3002-3004,

27

As the People observe, a defendant who believes he has been mistakenly placed on parole supervision rather than PRCS *also* has the ability to file an appeal with CDCR, and if unsuccessful, to pursue a petition for writ of habeas corpus. (See Cal. Code Regs., tit. 15, § 3084.1 [allowing appeal of "departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the welfare of inmates and parolees"]; *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 685 ["A parolee may bring a habeas proceeding challenging his or her parole conditions"]; *In re David* (2012) 202 Cal.App.4th 675, 680 ["A petition for a writ of habeas corpus can be used to challenge a parole restriction."].)[15] Because those remedies are available, the People contend that a parolee should be limited to them and should not be permitted to obtain relief from misclassification in a parole revocation proceeding. We are not persuaded. In enacting realignment, the Legislature gave the trial court the authority to modify the

---

3006, 3008-3010, 3010.5, 3010.8.) Because the Legislature gave trial courts the authority to intrude on *discretionary* choices by CDCR regarding parole supervision, it is reasonable to conclude that it also gave trial courts the authority to correct *errors* made by CDCR in applying the *mandatory* rules determining a defendant's classification.

[15]    If a defendant pursues an administrative appeal of his classification, the process could be time consuming while he exhausts each level of review so that he can then file a habeas corpus petition. (*Wright v. State of California* (2004) 122 Cal.App.4th 659, 665 [" ' "exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." ' "].) CDCR's regulations describe the appeal process available to prisoners and parolees. (See Cal. Code Regs., tit. 15, §§ 3084.1-3084.9.) The prisoner or parolee must utilize a particular form to describe the relief requested (Cal. Code Regs., tit. 15, § 3084.2, subd. (a)) and then may proceed through three levels of review. (Cal. Code Regs., tit. 15, § 3084.7.) The generally applicable time frame for CDCR to decide each level of review is set forth in the regulations. (Cal. Code Regs., tit. 15, § 3084.8.) Unless exceptions apply, the first two levels are to be decided in 30 days. The third level is to be decided in 60 days. (*Ibid.*)

conditions of parole in a parole revocation proceeding *even thou*gh the defendant also has the option of filing an administrative appeal with CDCR to challenge the conditions of parole.  (§ 3000, subd. (b)(7).)  In light of that provision, there is no reason to believe that the Legislature intended to preclude a trial court from ordering a transfer of the defendant from parole supervision to PRCS merely because the defendant also has the remedy of an administrative appeal and a habeas corpus petition.

The People argue that allowing a trial court to grant relief to the defendant in a parole revocation proceeding creates an incentive for a defendant to violate the conditions of parole so that DAPO will initiate a parole revocation proceeding where the defendant can seek a court order transferring him to PRCS.  We do not share the People's concern. In our view, it will be a rare case in which a parolee violates parole and puts himself at risk for sanctions merely to obtain court review of whether he belongs on parole.  It is more likely that a parolee who realizes he should have been released on PRCS rather than parole will pursue an appeal with CDCR and a petition for habeas corpus, if necessary, rather than choose to violate parole.  As a practical matter, as occurred here, the issue of whether the defendant was improperly placed on parole will most commonly arise in a parole revocation hearing not because the defendant has violated parole to obtain review of that issue, but rather because perceptive defense counsel handling the parole revocation proceeding notices that CDCR made a mistake in classifying the defendant. There is no compelling reason to prevent defense counsel from applying to the court for

an order transferring the defendant from parole supervision to PRCS based on the trial court's authority to "modify . . . supervision of the person."  (§ 1203.2, subd. (b)(1).)[16]

For all of these reasons, we conclude that the trial court has the authority in a parole revocation proceeding to consider the issue of whether the defendant was improperly placed on parole supervision rather than PRCS and, if appropriate, to order that supervision be transferred from parole to PRCS under the provision allowing it to "modify . . . supervision of the person."  (§ 1203.2, subd. (b)(1).)

B. *The 60-Day Period in Section 3000.08, subdivision (l) Does Not Bar Johnson's Transfer to PRCS*

Having concluded that a trial court has the authority in a parole revocation proceeding to transfer a defendant from parole supervision to PRCS, we next consider whether the trial court was barred from transferring Johnson to PRCS because of the 60-day time limit in section 3000.08, subdivision (l).  That provision states:  "Any person released to parole supervision pursuant to subdivision (a) shall, regardless of any

---

[16] We note that this case involves a prior determination by CDCR and a stipulation by the parties that Johnson's score on the Static-99R should have been two rather than four.  Because CDCR is vested by statute with the authority to administer the Static-99R (§ 290.06, subd. (a)(1)), and a trial court would not have expertise to do so, any future case in which a trial court grants relief based on a mistaken Static-99R score would have to be premised on a prior determination by CDCR that it mistakenly calculated the Static-99R score or on a stipulation of the parties that CDCR made a mistake.  However, being a high risk sex offender based on a Static-99R score is only one reason that a person is placed on parole supervision instead of PRCS.  For other defendants, placement on parole supervision is based on more straightforward criteria that a trial court has the expertise to assess, such as having been convicted of a violent or serious felony (§ 3000.08, subd. (a)).  In those types of cases, the trial court should be able to determine that CDCR mistakenly concluded that the defendant required parole supervision, even without a prior admission of a mistake by CDCR or a stipulation of the parties.

30

subsequent determination that the person should have been released pursuant to subdivision (b) [i.e., to PRCS], remain subject to subdivision (a) after having served 60 days under supervision pursuant to subdivision (a)."  Accordingly, the statute provides that a person released on parole supervision must remain on parole supervision, even if he should have been released to PRCS, if he has "served 60 days under [parole] supervision."  (§ 3000.08, subd. (l).)[17]

As we have explained, the trial court concluded that an order transferring Johnson from parole supervision to PRCS was not barred by the statute's 60-day rule because the end of the 60-day period was the date on which Johnson postmarked his appeal to CDCR, which occurred 58 days after he was initially released to parole supervision on July 25, 2018.  In light of its conclusion that Johnson was not barred by the 60-day rule because he postmarked his appeal less than 60 days after his release from prison, the trial court did not decide whether, for the purposes of the 60-day rule, the time that Johnson spent in jail custody for his parole violations should not be counted as time that he served under parole supervision.

Johnson focuses much of his argument on establishing that, because of due process concerns, we should adopt the same interpretation of the 60-day rule as the trial

---

17    The statute governing placement of persons on PRCS contains a similar 60-day rule, stating that a person must remain on PRCS after having served 60 days under PRCS supervision.  (§ 3451, subd. (d) ["A person released to postrelease community supervision pursuant to subdivision (a) shall, regardless of any subsequent determination that the person should have been released to parole pursuant to Section 3000.08, remain subject to subdivision (a) after having served 60 days under supervision pursuant to subdivision (a)."].)

31

court, namely that the end of the 60-day period should be the date on which the defendant gives notice that he is challenging CDCR's decision to place him on parole supervision rather than on PRCS. Johnson points out that in many cases a parolee will not, as a practical matter, be able to obtain a determination within 60 days of his release from prison that he was mistakenly placed on parole supervision rather than on PRCS. Johnson explains that CDCR's administrative appeal process could take over 120 days to exhaust (Cal. Code Regs., tit. 15, § 3084.8), and that the timeline for obtaining a decision on a habeas corpus petition after exhausting administrative remedies will stretch far beyond the 60-day period.

Although we understand Johnson's concerns with the practicality of a parolee obtaining relief within 60 days when challenging CDCR's decision to require parole supervision rather than PRCS, we need not and do not decide whether the 60-day rule means that a *determination* that the parolee was misclassified must be made before the parolee serves 60 days on parole supervision, or whether, as the trial court concluded, the trigger for the end of the 60-day period is the parolee's *challenge* to CDCR's classification. Nor need we address Johnson's due process contentions. As we will explain, we conclude that because of the time that Johnson spent in jail custody for his parole violations, he did not serve 60 days on parole supervision before CDCR determined that he should have been released on PRCS.

Two provisions are relevant to determining whether the time that a defendant spends in jail custody because of a parole violation is part of the period that the defendant has served under parole supervision. First, the parties identify section 3000,

32

subdivision (b)(6), which sets forth the guidelines for calculating the maximum statutory period of parole that a defendant can be required to serve. According to that provision, "Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation." (§ 3000, subd. (b)(6).) The People contend that this provision does not apply in determining whether a parolee has served 60 days under parole supervision within the meaning of section 3000.08, subdivision (l), because the provision is directed solely at calculating the defendant's maximum statutory period of parole.

However, the parties overlook another crucial provision in the Penal Code which more directly addresses the issue presented here and uses language that is especially pertinent. Section 3056 states, "When a parolee is under the legal custody and jurisdiction of a county facility awaiting parole revocation proceedings or upon revocation, he or she shall not be under the parole supervision or jurisdiction of the department. . . . When released from the county facility or county alternative custody program following a period of custody for revocation of parole or because no violation of parole is found, the parolee shall be returned to the parole supervision of the department for the duration of parole." (§ 3056, subdivision (a).) This provision squarely resolves the issue presented, namely, whether the period that a person spends in jail custody because of a parole violation is counted in determining whether the person has "served 60 days under supervision" as stated in section 3000.08, subdivision (l). According to section 3056, a person in custody in a county facility because of a parole violation "shall

33

not be under the parole supervision or jurisdiction of the department" and only when the person is released from the county facility is he "returned to . . . parole supervision." (§ 3056, subd. (a).) This language was added to section 3056 in 2012 (Stats. 2012, ch. 43 (Sen. Bill 1023), § 43, eff. June 27, 2012), and thus was in effect *prior* to the Legislature's enactment of the 60-day rule in 2013. (Stats. 2013, ch. 32 (Sen. Bill 76), § 9, eff. June 27, 2013.) We therefore presume that in enacting the 60-day rule in 2013, when the Legislature was referring to a parolee having "served 60 days under supervision," it meant to incorporate the definition of being "under . . . parole supervision" already set forth in section 3056, subdivision (a). (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 862-863 ["We presume that the Legislature is aware of laws in existence when it enacts a statute."].)

Here, the record shows that Johnson spent numerous days in jail custody due to parole violations after he was released from prison to parole supervision on July 25, 2018. Specifically, although CDCR determined on October 12, 2018, (79 days after he was released to parole supervision on July 25, 2018) that Johnson should have been released to PRCS, during that 79-day period Johnson spent 75 days in jail custody either awaiting parole revocation proceedings or serving a term in custody as a sanction for parole violations. Therefore, in light of his time in jail custody, Johnson did not serve 60 days under parole supervision before it was determined that he should have been released

34

on PRCS; he spent only four days.[18]  We accordingly conclude that the trial court was not barred by the 60-day rule set forth in section 3000.08 from entering an order transferring Johnson from parole supervision to PRCS.

DISPOSITION

The trial court's order is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

DATO, J.

---

[18]  Similarly, Johnson did not spend 60 days under parole supervision prior to the trial court's order transferring him to PRCS on November 15, 2018.  Although at the time of the November 15, 2018 order 113 days had passed since Johnson was released from prison on July 25, 2018, he spent 109 of those days in jail custody.

35