Filed 9/29/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CHARLES ANDRE TOUSSAIN,<br><br>    Defendant and Respondent. | G050210<br><br>(Super. Ct. No. P-01242)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Craig E. Robison, Judge. (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Janet E. Neeley, Deputy Attorneys General, for Plaintiff and Appellant.

Richard L. Fitzer, under appointment by the Court of Appeal; and Miles David Jessup, Deputy Public Defender, for Defendant and Respondent.

\*        \*        \*

The trial court found the California Department of Corrections and Rehabilitation (CDCR) lacked authority to supervise defendant Charles Andre Toussain on parole because his current commitment offense, failing to register as a sex offender, was not a crime that subjected him to classification as a high-risk sex offender. (See Pen. Code, § 3000.08, subd. (a)(4); all statutory references are to the Penal Code unless otherwise designated). The court dismissed CDCR's petition alleging Toussain violated parole by tampering with his electronic monitoring (Global Positioning System or GPS) device, and directed that county officials supervise Toussain under the postrelease community supervision (PRCS) program. The Attorney General appeals from the order dismissing the petition, contending the Legislature authorized CDCR to classify the risk of reoffense posed by all registerable sex offenders released from prison, and therefore the offender's current commitment offense is not determinative if CDCR has assessed the person as a high-risk sex offender. We agree the Legislative scheme requires parole supervision for anyone CDCR has classified as a high-risk sex offender, regardless of the current commitment offense. Accordingly, we reverse.

I

FACTUAL AND PROCEDURAL BACKGROUND

In April 2014, Toussain's CDCR parole agent filed a parole revocation petition alleging Toussain had been convicted for failing to register as a sex offender (§ 290.018, subd. (b)(1)) in April 2013. The previous month, CDCR had released Toussain on parole with various terms and conditions, including that he "participate in continuous electronic monitoring, e.g., Global Positioning System (GPS) technology," that he "not tamper with the [GPS] device," and that he "contact [the] parole agent immediately if and when the device vibrates and/or makes an audible tone (beep)."

The petition alleged Toussain violated parole by tampering with his GPS device just 10 days after he was released. According to the petition, after midnight on March 23, 2014, Toussain's parole agent received information from the GPS tracking

2

company that the fiber optic band connected to Toussain's GPS device had been tampered with or was malfunctioning. The agent transmitted an audible and vibrating alert to Toussain's device, but Toussain did not respond. Toussain, a transient, did not have a telephone number. About an hour later, agents located Toussain lying on the ground in front of the Public Defender's office in Santa Ana. The GPS device was on the ground next to Toussain. The agent believed someone had tampered with the device by pulling the fiber optic band from one side and breaking the clips that hold the GPS device and fiber optic band together. Toussain claimed the device came off his leg when he fell down, but he admitted he did not attempt to contact the agent to report the device came off.

Toussain's underlying sex offense conviction, assault with intent to rape (§ 220), occurred in May 1989 and resulted in a six-year prison sentence. Beginning in 1985, Toussain's criminal history included eight separate prison commitments for various offenses, including narcotics sales and possession, manufacturing a weapon in prison, theft, and forgery. The parole revocation petition alleged Toussain's Static-99 (sex offender) risk category was "high," and recommended the court return Toussain to custody for 180 days.

Toussain moved to dismiss the parole revocation petition, asserting the court lacked jurisdiction to hear the petition. He argued CDCR could not supervise him because his most recent prison stint was not for a crime triggering parole supervision under section 3000.08. The district attorney responded section 3008 required parole supervision because CDCR classified Toussain as a high-risk sex offender with a Static-99 score of 7. Following a hearing in May 2014, the court dismissed the petition for lack of jurisdiction, stating "supervision should be transferred to the probation department where defendant is to be placed on postrelease community supervision [PRCS]." The court ordered Toussain's immediate release and directed him to present himself to county

3

probation officials the next day.  The Attorney General appeals the trial court's decision to dismiss the parole revocation petition.

## II

### DISCUSSION

The Attorney General contends CDCR properly exercised parole supervision over Toussain and was entitled to seek his parole revocation because CDCR classified him as a high-risk sex offender, and all high-risk sex offenders released from prison must be placed on parole rather than PRCS regardless of the offender's most recent commitment offense.  For the reasons expressed below, we agree.

Section 3000.08 provides in relevant part, "(a)  *A person released from state prison prior to* or on or after *July 1, 2013*, after serving a prison term, or whose sentence has been deemed served pursuant to Section 2900.5, *for any of the following crimes is subject to parole supervision by* **[CDCR]** and the jurisdiction of the court in the county in which the parolee is released, resides, or in which an alleged violation of supervision has occurred, for the purpose of hearing petitions to revoke parole and impose a term of custody:  [¶]  (1) A serious felony as described in subdivision (c) of Section 1192.7.  [¶]  (2) A violent felony as described in subdivision (c) of Section 667.5.  [¶]  (3)  A crime for which the person was sentenced pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12.  [¶]  (4) *Any crime for which the person is classified as a high-risk sex offender*.  [¶]  (5) Any crime for which the person is required, as a condition of parole, to undergo treatment by the State Department of State Hospitals pursuant to Section 2962.  [¶]  (b) Notwithstanding any other law, all other offenders released from prison shall be placed on postrelease supervision [PRCS] pursuant to Title 2.05 (commencing with Section 3450)."  (Italics and boldface added.)

"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.  [Citations.]  In order to

4

determine this intent, we begin by examining the language of the statute. [Citations.] . . . '[L]anguage of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People v. Pieters* (1991) 52 Cal.3d 894, 898-899.) We independently determine under the de novo standard of review questions of statutory interpretation. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

By its terms, section 3000.08 requires parole supervision, not PRCS, *whenever* a person who has committed "[a]ny crime for which the person *is* classified as a high-risk sex offender." (§ 3000.08, subd. (a)(4), italics added.) Toussain contends parole supervision is required only when the offender's *most recent* prison commitment is for a crime for which the person was classified as a high-risk sex offender, but the plain terms of the statutory language include no such limitation. To the contrary, the Legislature specified that even for offenders already released from prison "prior to" section 3000.08's effective date on July 1, 2013, the person "*is* subject to" CDCR parole supervision if he or she served a prison term for "[a]ny crime for which the person is classified as a high-risk sex offender." (§ 3000.08, subd. (a)(4), italics added.)

The Legislature's use of the present tense ("is classified as" and "is subject to") discloses a plain intent that individuals who *are* classified as high-risk sex offenders shall be subject to parole supervision based on a qualifying commitment offense ("Any crime for which the person is classified as a high-risk sex offender"), even in circumstances where they reoffend and are released from prison after a new offense. In other words, the high-risk sex offender designation remains controlling and requires parole supervision whether the person committed a qualifying offense and first gained

5

release from prison "prior to[,] on *or* after July 1, 2013." (§ 3000.08, subd. (a), italics added.) Otherwise, a high-risk sex offender on parole could deliberately commit a low-level felony to prompt parole revocation, serve time on the new offense, and gain release on PRCS rather than continue under parole supervision.

The distinction between parole and PRCS is important because PRCS offenders are not subject to the Legislature's containment model to deter sex offender recidivism. Section 290.03 describes the Legislature's intent in adopting that model as follows: "In enacting the Sex Offender Punishment, Control, and Containment Act of 2006, the Legislature hereby creates a standardized, statewide system to identify, assess, monitor and contain known sex offenders for the purpose of reducing the risk of recidivism posed by these offenders, thereby protecting victims and potential victims from future harm." (§ 290.03, subd. (b); see also Sen. Com. on Public Safety on Assem. Bill No. 1844 (2009-2010 Reg. Sess.) June 29, 2010 ["The Containment Model calls for a collaborative effort of sex offender specific treatment providers, law enforcement supervising agents such as probation officers or parole agents, polygraphists providing specialized testing as both a treatment and monitoring tool and victim advocacy participants whenever possible. The offender is supervised and overseen within this context"].)

As the Attorney General observes, however, unlike parolees and probationers, state law does not require PRCS offenders to participate in a containment model sex offender management program. (§§ 290.09, subd. (a)(1), 1203.067, 3008, subds. (a), (c) & (d).) The Attorney General also observes that while CDCR "receives funding for sex offender treatment services and risk assessment testing for indigent paroles, there exists no similar funding mechanism for those monitored on local community supervision. Thus, those services, as well as dynamic and violence risk assessment, are not required, and often not made available, to individuals subject only to community supervision." (Citing Chelsea's Law Implementation Report, California Sex

6

Offender Management Board (Feb. 2013), available under "Reports" at <www.casomb.org>.) PRCS offenders may have less incentive to comply with any available local treatment programs because section 3458 prohibits a return to prison for violating supervisory terms, unlike for parole revocation. Additionally, PRCS offenders may be released entirely from supervision within six months of release (§ 3456, subd. (a)(2)), while parolees who must register as sex offenders must remain under parole supervision for a minimum of three years. (§§ 3000, subd. (b)(2); 3001, subd. (a)(1).)

In light of the Legislature's containment model, we find no merit in Toussain's argument that high-risk sex offenders are entitled to PRCS and may avoid parole supervision under section 3000.08 based on their most recent offense. This construction defeats the Legislature's intent to require close monitoring of registered sex offenders. Simply put, without sex offender-specific treatment, there is a greater risk these individuals will reoffend.

The core flaw in Toussain's construction is his assumption the "crime for which the person is classified as a high-risk sex offender" is the same crime for which he or she is released from a current prison commitment. But the statutory language does not tie the high-risk classification to the person's current commitment or release from prison. Rather, parole supervision is required based on having served a prison term for "*Any* crime" resulting in high-risk sex offender classification. (§ 3000.08, subd. (a)(4), italics added.) And nothing suggests the classification must be reevaluated with each pending release for subsequent commitment offenses. To the contrary, classification is not tethered to an inmate's release, as Toussain suggests. Rather, every "eligible person" is classified either upon incarceration or *after* his or her release on parole. (§ 290.06, subds. (a)(1), (2).)

No criminal statute automatically "classifies" someone as a high-risk sex offender. Indeed, the only statutory definition of a high-risk sex offender appears in a Penal Code chapter other than that containing section 3000.08. Section 13885.4 defines

7

"'high risk sex offender'" as a person who is required to register as a sex offender, *and* he or she has been "assessed with a score indicating a 'high risk' on" the State Authorized Risk Assessment Tool for Sex Offenders (SARATSO) *or* the person is "identified as being at a high risk of reoffending by the Department of Justice, based on the person's SARATSO score when considered in combination with other, empirically based risk factors." (§ 13885.4.) This definition of "high risk sex offender" applies "[a]s used in" Chapter 9.5 (Statewide Sexual Predator Apprehension Team), of Title 6 (California Council on Criminal Justice), Part 4 (Prevention of Crimes and Apprehension of Criminals of the Code), which does not include section 3000.08. But our review of the statutory scheme as a whole governing sex offenders convinces us section 3000.08, subdivision (a)(4), requires parole supervision for all registered sex offenders released from prison, regardless of the person's current commitment offense, if CDCR has classified the person as high risk based on the person's SARATSO score.

Section 290.04, subdivision (a)(1), provides: "Every person required to register as a sex offender shall be subject to assessment with the SARATSO as set forth in this section and elsewhere in this code." Section 290.04 further requires CDCR, the Department of State Hospitals, and the Attorney General to form and assign representatives to the SARATSO Review Committee (SRC). (§ 290.04, subd. (a)(2).) The SRC is charged with developing and ensuring the SARATSO "reflects the most reliable, objective, and well-established protocols for predicting sex offender risk of recidivism, has been scientifically validated and cross validated, and is, or is reasonably likely to be, widely accepted by the courts. The [SRC] shall consult with experts in the fields of risk assessment and the use of actuarial instruments in predicting sex offender risk, sex offending, sex offender treatment, mental health, and law, as it deems appropriate." (§ 290.04, subd. (a)(2).) Accordingly, the SRC has developed and updated SARATSO assessment tests for various populations, including "the STATIC-99 risk assessment scale" and its update, the STATIC-99R, for "adult males required to register

8

as sex offenders." (§ 290.04, subd. (b)(1); see www.saratso.org/index.cfm?pid=467 ["The Static-99R is based on static (unchanging) risk factors which predict the potential for sexual re-offending"].)

Section 290.06 provides, "The static SARATSO, as set forth in Section 290.04, shall be administered as follows: [¶] (a)(1) The Department of Corrections and Rehabilitation shall assess every eligible person who is incarcerated in state prison. Whenever possible, the assessment shall take place at least four months, but no sooner than 10 months, prior to release from incarceration." CDCR also must assess "every eligible person who is on parole if the person was not assessed prior to release from state prison. Whenever possible, the assessment shall take place at least four months, but no sooner than 10 months, prior to termination of parole." (§ 290.06, subd. (a)(2).) Upon completing an assessment, CDCR must "record in a database the risk assessment scores of persons assessed pursuant to this paragraph and paragraph (1), and any risk assessment score that was submitted to the department by a probation officer pursuant to Section 1203." (*Ibid.*; see § 1203 [providing that probation officer's report shall include SARATSO results where applicable].)

An "eligible person" as used in section 290.06 "means a person who was convicted of an offense that requires him or her to register as a sex offender pursuant to the Sex Offender Registration Act and who is eligible for assessment, pursuant to the official Coding Rules designated for use with the risk assessment instrument by the author of any risk assessment instrument (SARATSO) selected by the SARATSO Review Committee." (§ 290.06, subd. (c).) The Attorney General asserts Toussain was an "eligible person" (*ibid.*), and Toussain does not disagree. In the absence of anything contrary in the record, we must assume CDCR correctly determined Toussain was an eligible person, and properly scored his SARATSO assessment. (Evid. Code, § 664.)

Administrative regulations adopted by CDCR define the term high-risk sex offender: "Definition. High risk sex offender means a sex offender who, pursuant to []

9

section 290.04, has been assessed and deemed by the CDCR to pose a high risk to commit a new sex offense." (Cal. Code Regs., tit. 15, § 3582, subd. (a).) The Attorney General includes on appeal, and we judicially notice, the CDCR's "Static-99R" scoring categories, which are available online. (www.saratso.org/index.cfm?pid=467.) The designated categories include a score of 4-5 as "Moderate-High Risk," and 6 or above as "High Risk."

The Attorney General also supplies and we judicially notice a CDCR memo dated September 15, 2014, setting forth "The Division of Adult Parole Operations' Policy and Procedures for the Sex Offender Management Program." The memo details CDCR's procedures for its Sex Offender Management Program (SOMP). The SOMP memo provides: "*An offender with a Static-99R score of four or greater shall be designated as a [high-risk sex offender or HRSO] for purpose of identifying release to parole supervision.* All sex offender parolees required to register pursuant to [section] 290 shall be assigned to and supervised on specialized caseloads." (Italics added.)

The Legislature has not defined the term high-risk sex offender as used in section 3000.08, subdivision (a)(4). But CDCR has defined the term in the foregoing regulation (Cal. Code Regs., tit. 15, § 3582, subd. (a)) and its written sex offender management policy. CDCR has determined a sex offender with a Static-99R score of four or greater is designated as a high-risk sex offender and therefore subject to parole supervision. Nothing suggests CDCR's definition and implementation exceed the bounds of its statutory mandate. (See *Morris v. Williams* (1967) 67 Cal.2d 733, 748 [agency must exercise its regulatory authority within the bounds of statutory mandate; no regulation adopted is valid or effective unless consistent and not in conflict with the statute].) Nor does its interpretation conflict with section 13885.4's definition of high-risk sex offender as a person who is required to register as a sex offender and who has been assessed with a score indicating a high risk on the SARATSO. We also note this interpretation is consistent with the Realignment Act (A.B. 109), which as explained in a

10

Senate Committee Analysis "requires state parole supervision for offenders released from state prison whose current conviction is for a serious or violent offense, those who are third strikers, and *those who are High Risk Sex Offenders*." (Senate Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 109 (2011-2012 Reg. Sess.) March 17, 2011, p. 3, [¶] 6, italics added.)

Toussain asserts that as "a 55-year old, homeless man who needs a 'cane or wheelchair' to get around," and whose registerable sex offense occurred in 1989, he is "anything but" a high-risk sex offender. He suggests that after Realignment, the "Parole Department is incentivized to grow its dwindling client base by stretching the only loosely defined category of prisoners who are still released to parole," and has "cast[] aside the state mandated definition of high risk sex offenders, contained in [] section 13885.4, in favor of the individual discretion of parole agents and unit supervisors . . . ." According to Toussain, "At present . . . [the assessment] involves a parole agent applying the static assessment tool (with a finding of high or moderate high risk, or possibly even low risk) supplemented as desired by the general personal opinion of the reviewing agent [or a supervisor]."

The record does not contain any evidence CDCR or Toussain's parole agent are illegally misclassifying prisoners or parolees. The trial court dismissed this case and released Toussain to PRCS at the pleading stage on the erroneous basis that his current commitment conviction was not itself a registerable sex offense requiring his classification or reclassification as a high-risk sex offender. We express no opinion on the general or specific misclassification issues, or what remedy a parolee might have to correct an improper classification because these issues were not addressed below. We conclude only that the trial court erred in dismissing CDCR's petition alleging Toussain violated the terms of his parole.

## III

### DISPOSITION

The order dismissing CDCR's petition alleging Toussain violated the terms of his parole is reversed.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.