Filed 8/25/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>        Respondent;<br><br>ROBERT L. ESCOBEDO,<br><br>        Real Party in Interest. | A166559<br><br>(Alameda County<br>Super. Ct. Nos. 20-CR-012838,<br>20-CR-012947, 20-CR-012845) |

The California Department of Corrections and Rehabilitation (CDCR) seeks review by extraordinary writ of an order placing defendant Robert Escobedo on felony probation pursuant to a negotiated disposition. To effectuate the plea agreement, the superior court permitted the People to withdraw a pending petition for revocation of parole that CDCR filed against Escobedo, who was on lifetime parole when he committed his current offense. (Pen. Code, § 3000.1, subd. (a)(1); statutory references are to this code unless otherwise indicated.) CDCR challenges the authority of the superior court to release Escobedo pursuant to a grant of probation, instead of adjudicating CDCR's parole revocation petition and returning him to prison if the court

1

finds that he has committed a new offense.  (See § 3000.08, subd. (h) (section 3000.08(h)).)

We conclude that because Escobedo was on lifetime parole, the superior court lacked authority to release him on probation after finding that he committed a new criminal offense.  Once the court found Escobedo had committed another crime, it was required to remand him to the custody of CDCR.  (§ 3000.08(h).)  Accordingly, we grant CDCR's mandate petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996, a jury convicted Escobedo of second degree murder and discharging a firearm into an inhabited dwelling, and also found true sentence enhancement allegations for personal use of a firearm.  (§§ 187, subd (a), 246, 12022.5, subd (a).)  Escobedo was sentenced to an aggregate prison term of 19 years to life.

In June 2016, Escobedo was released from prison and placed on parole. Because Escobedo's sentence for murder included a maximum term of life imprisonment, he was placed on lifetime parole.  (§ 3000.1, subd. (a)(1).)  As a lifetime parolee, Escobedo faced consequences for violating parole that do not apply to people who are on parole for a defined period.  Specifically, if a court determines that a person who is on lifetime parole "has committed a violation of law or violated his or her conditions of parole, the person . . . shall be remanded to the custody of the Department of Corrections and Rehabilitation and the jurisdiction of the Board of Parole Hearings for the purpose of future parole consideration."  (§ 3000.08(h).)

On September 29, 2020, the Alameda County District Attorney filed a criminal complaint charging Escobedo with two counts of forcible oral copulation with Jane Doe (§ 287, subd. (c)(2)(A)), and two counts of making criminal threats, one against Jane Doe and the other against a second victim

2

(§ 422, subd. (a)). On September 30, the District Attorney filed a petition for revocation of Escobedo's parole due to the criminal violations alleged in the complaint. This petition did not reflect that Escobedo was on lifetime parole, notwithstanding that the District Attorney used a form petition that contains a box to be checked when the supervised person is on lifetime parole.

On October 1, 2020, CDCR filed a petition for revocation of Escobedo's parole, which did reflect Escobedo was on lifetime parole. CDCR's petition was accompanied by a "Parole Violation Report" alleging that Escobedo violated multiple laws on September 25 and 27, 2020, during or relating to nonconsensual sexual encounters, specifically: oral copulation with a nonconsenting adult (§ 287, subd. (c)(2)(A)); battery of a spouse (§ 273.5); false imprisonment (§ 236); and criminal threats (§ 422). The dates and descriptions of the criminal conduct in CDCR's petition match the allegations in the criminal complaint filed two days earlier. CDCR alleged further that Escobedo violated a special condition of his parole prohibiting him from consuming alcohol; according to CDCR's parole violation report, Escobedo admitted drinking alcohol for approximately 10 days and that his alcohol consumption played a major role in his commission of the charged offenses. CDCR's petition stated that Escobedo was subject to supervision pursuant to section 3000.1, and that if the court determined he violated parole, the court was required to remand him to the custody of CDCR.

CDCR also reported that it considered imposing intermediate sanctions but deemed them inappropriate. The report documented Escobedo's criminal history, which predates his murder conviction, five CDCR disciplinary violations Escobedo incurred while in prison, and one other parole violation for consuming alcohol and being drunk in public. CDCR reported that Escobedo had been referred to specialized treatment programs in the past,

3

and another such referral would be inappropriate due to the high risk of recidivism and threat to public safety.

On August 16, 2022, the superior court held a change-of-plea hearing in Escobedo's criminal case. The hearing transcript references case numbers for three pending matters against Escobedo—the criminal case and the two parole revocation petitions. But when the judge requested appearances, she made no reference to CDCR. At the hearing, the Deputy District Attorney (DDA), Ms. Chavez, recited the terms of a negotiated disposition of Escobedo's criminal case: He would plead guilty or no contest to one count of violating section 422 by making criminal threats, and would admit an aggravating factor of threatening or dissuading a witness. In exchange for his plea, Escobedo would be placed on three years of felony probation and be subject to a criminal protective order protecting both victims. All remaining counts and related enhancements would be dismissed. In addition, the People agreed to dismiss "two other dockets." DDA Chavez then clarified that the People had agreed they would dismiss both parole revocation petitions before Escobedo entered a new plea admitting the section 422 felony. Defense counsel interjected that it was important to withdraw the petitions first, and the People agreed. Accordingly, the People made a formal motion to withdraw the revocation petitions, which the court granted before it proceeded to take Escobedo's plea. The matter was continued until September for sentencing.

On August 17, 2022, Ms. Martin, a parole agent supervisor from CDCR's court compliance unit, sent an email to Judge Nixon at the Alameda County superior court, DDA Chavez, and Escobedo's defense counsel. Judge Nixon was not the judge who took Escobedo's change of plea and would not be the judge to sentence him, but Martin may have been under the

4

misconception that Escobedo's criminal case was assigned to Judge Nixon, as the purpose of her email was to share information about Escobedo's status as a lifetime parolee. Martin stated that while tracking Escobedo's cases on CDCR's computer system, she noticed a sentencing hearing was scheduled, and that parole petitions had been "withdrawn by the DA." Martin advised that because Escobedo is a "lifer parolee" subject to section 3000.1, the court was required to hold a good cause hearing as to both parole revocation petitions and, if there was good cause, to remand Escobedo to the Board of Parole Hearings. She stated further that "if [Escobedo is] convicted of the criminal charges, the Court must also remand him to the custody of CDCR where he will also be returned to prison, as he falls under the authority of the Board of Parole Hearings." And "[t]his verbiage needs to be on the minute order at sentencing," Martin continued, going into detail about how section 3000.08(h) applied in Escobedo's case.

On September 14, 2022, Escobedo appeared for sentencing before a different judge, who made a record of the fact that the court and counsel had discussed the case before the matter was called on the record, and that counsel had "enlighten[ed] the Court to some of the rationale behind the negotiated disposition." Based on that unrecorded conversation, the court accepted the plea agreement. Following submission of the matter, Escobedo was sentenced in accordance with the negotiated disposition, to a suspended sentence for a period of three years during which he would be on felony probation. Near the end of the hearing, the court observed that two parole petitions had been withdrawn on the day Escobedo changed his plea, but there was no mention or acknowledgement of the fact Escobedo was on lifetime parole. Whether agent Martin's email, or the information in it, ever

found its way to the judge who sentenced Escobedo is unknown, and nobody from CDCR appeared at Escobedo's sentencing hearing.

On November 14, 2022, CDCR, represented by the Attorney General of California, filed a petition in this court for writ of mandate or other appropriate relief, seeking review of the September 2022 order placing Escobedo on probation. CDCR contends it was unlawful for the superior court to accept a negotiated plea pursuant to which the People withdrew the parole revocation petitions, prays for a writ of mandate commanding the trial court to adjudicate those petitions, and seeks such other relief as may be just and appropriate. (Code Civ. Proc., § 1085, subd. (a).) CDCR names the superior court as respondent and Escobedo as the primary real party in interest. CDCR alleges that the Alameda County District Attorney's Office is also a real party in interest, due to its representation of the People in the underlying criminal case against Escobedo.

After informal briefing, this court issued an order to show cause. The Alameda County District Attorney's Office advises that the People decline to take any position regarding CDCR's mandate petition. Escobedo, however, vigorously opposes the petition on procedural and substantive grounds. He argues that CDCR's mandate petition should be denied without consideration of its merits because CDCR fails to show it has no other adequate remedy or, alternatively, that CDCR does not have standing to bring this writ proceeding. Escobedo also contends the mandate petition lacks merit because his plea bargain does not violate the law governing proceedings to revoke parole.

# DISCUSSION

## I. Overview of Parole Revocation Law

Historically, parole revocation was solely the responsibility of the Board of Parole Hearings (BPH), but jurisdiction over most petitions to revoke parole was shifted to the superior courts in 2012, when the Legislature amended section 1203.2 to incorporate parole into statutes governing revocation of other types of statutory supervision. (*People v. DeLeon* (2017) 3 Cal.5th 640, 647.) Currently, sections 1203.2 and 3000.08 establish the statutory framework for parole revocation proceedings. (*DeLeon*, at p. 647.)

CDCR supervises individuals who are placed on parole after serving prison sentences. (§ 3000.08, subds. (a) & (i).) Both the parole agency and the district attorney have statutory authority to file a petition to revoke a person's parole. (§ 1203.2, subds. (a) & (b).) Some rules and procedures differ depending on which entity has filed a petition. (*People v. Williams* (2021) 71 Cal.App.5th 1029, 1038 (*Williams*).) Importantly, the agency has a statutory duty to file a revocation petition if it concludes that intermediate sanctions are not appropriate under the circumstances. (§ 3000.08, subd. (f).) An agency-filed petition must be accompanied by a written report containing additional information about the parolee, including history and background information, any recommendations, and an explanation as to why intermediate sanctions without court intervention are inappropriate. (*Ibid*.; Cal Rules of Court, rule 4.541.) This statutory requirement to submit a report with a revocation petition does not apply to the district attorney. Instead, after the district attorney files a petition to revoke parole, the superior court is required to refer the petition to the parole officer for a report

7

and to consider that written report before deciding the merits of the petition. (§ 1203.2, subd. (b) (section 1203.2(b)); *Williams*, at pp. 1039–1040.)

Some aspects of parole revocation law apply to all inmates released on parole but, as we have noted, once a court finds that a lifetime parolee has violated conditions of parole *or* the law, a special rule applies. (*People v. Wiley* (2019) 36 Cal.App.5th 1063, 1067 (*Wiley*); *People v. Perlas* (2020) 47 Cal.App.5th 826, 836 (*Perlas*); *Williams*, *supra*, 71 Cal.App.5th at p. 1040.) Generally, when a trial court finds a parole violation, it has discretion to modify or revoke parole or to refer the violator to a reentry court or other evidence-based program. (§ 3000.08, subd. (f); see also § 1203.2.) "These options do not exist when the court adjudicates a petition concerning a lifetime parolee," however. (*Williams*, at p. 1040.) "[O]nce the court finds that a lifetime parolee has violated parole, revocation is 'mandatory.' " (*Ibid.* quoting *Perlas*, at p. 836.) This legislative mandate is codified in section 3000.08(h), which provides that, "[n]otwithstanding any other law," if the court determines a lifetime parolee "has committed a violation of law or violated his or her conditions of parole, the person on parole shall be remanded to the custody of [CDCR] and the jurisdiction of the [BPH] for the purpose of future parole consideration." (§ 3000.08(h); see §§ 3000.1 & 3000, subd. (b)(4).)

With this framework in mind, we turn to the issues raised by the parties in this writ proceeding.

## II.  CDCR's Writ Petition Is Procedurally Sound

A writ of mandate "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested." (Code Civ. Proc., § 1086.)

8

### A. CDCR Has No Other Plain, Speedy, and Adequate Remedy

CDCR contends writ review is proper because it has no other adequate remedy to enforce section 3000.08(h), which requires that Escobedo be immediately returned to the custody of CDCR as a result of his recent criminal violation. Escobedo disputes this contention.

Because writ review is an extraordinary remedy, courts generally do not grant writ relief absent extraordinary circumstances. (*City of Half Moon Bay v. Superior Court* (2003) 106 Cal.App.4th 795, 803.) Pertinent factors include whether (1) "the party seeking the writ lacks an adequate means, such as direct appeal, to obtain relief," (2) "the petitioner will suffer harm or prejudice which cannot be corrected on appeal," or (3) "the petition presents an issue of first impression that is of general interest to the bench and bar." (*United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 74; see also *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1273–1274.) We find all three circumstances present to varying degrees. Like the parties, we focus our discussion on the first two circumstances, but we note at the outset that the issue presented is new, and nobody disputes its importance.

The crux of Escobedo's procedural objection to this writ proceeding is that CDCR purports to challenge the September 2022 sentencing order despite the fact that it could have filed a direct appeal from the August 2022 order that allowed the People to withdraw the parole revocation petitions before Escobedo changed his plea. We disagree. The record shows that withdrawal of both petitions was a material term of the plea agreement between the People and Escobedo. When asked to "state the terms and conditions" of the negotiated disposition, DDA Chavez explained the plea Escobedo would enter and terms of probation he would accept, then stated

9

that "[i]n exchange for this plea, the remaining counts and any enhancements will be stricken and dismissed. [¶] And . . . before he agrees to do this, we are dismissing two other dockets," the two parole petitions. Dismissal or withdrawal of these petitions would have been important consideration for Escobedo's plea, since they threatened him with mandatory return to prison. And because the order permitting withdrawal of those petitions was a material term of the negotiated disposition, it was not a final decision by the court in August 2022. Along with the rest of the plea agreement, the order could have been set aside in light of further consideration of the matter at any time until pronouncement of judgment in the new case. (§ 1192.5, subd. (c).)

Escobedo cites cases involving appeals from rulings in parole revocation matters, but only one precedent that involved a plea agreement. (*People v. VonWahlde* (2016) 3 Cal.App.5th 1187.) In *VonWahlde*, the trial court preliminarily revoked the defendant's parole pursuant to a petition charging him with absconding from parole supervision and then continued the matter because the defendant was also facing new charges. (*Id.* at p. 1191.) Subsequently, the defendant entered a plea in the new criminal case pursuant to an agreement that provided for a stipulated prison term to run concurrently with the parole revocation case. (*Ibid.*) But then at the sentencing hearing a month later, the court ordered parole terminated instead. Ostensibly, this was pursuant to the court's discretion under section 1385, since the defendant was heading to prison on the new case. (*Id.* at pp. 1192–1193.) The People could appeal this termination order as a postjudgment order affecting the defendant's sentence, the *VonWahlde* court held. (*Id.* at pp. 1194–1195, citing § 1238, subd. (a)(5).)

10

*VonWahlde* reinforces our conclusion that the order permitting the People to withdraw parole revocation petitions in this case was not immediately appealable. The *VonWahlde* plea agreement disposed of a related revocation petition by including a stipulated sentence for the parole violation, and the order accepting that stipulated disposition was not immediately appealable. Indeed, that order was subsequently changed at sentencing, when the *VonWahlde* trial court purported to terminate parole supervision pursuant to section 1385, and it was that final ruling that became the appealable order. By the same reasoning, the order permitting the district attorney to withdraw the revocation petitions pending against Escobedo pursuant to a plea agreement was not a final order. (§ 1192.5, subd. (c); see *People v. Stamps* (2020) 9 Cal.5th 685, 706 [" 'court, upon sentencing, has broad discretion to withdraw its prior approval of a negotiated plea' "].) Thus, we reject Escobedo's contention that the August 2022 order was immediately appealable.

We also reject Escobedo's related argument that CDCR's mandate petition was not timely filed. "As a general rule, a writ petition should be filed within the 60-day period that applies to appeals." (*Cal West Nurseries v. Superior Court* (2005) 129 Cal.App.4th 1170, 1173.) Escobedo's contention that CDCR violated this rule rests on the erroneous assumption that the August 2022 order was immediately appealable. That order became final at the September 2022 hearing, when the sentencing court accepted the parties' plea agreement and imposed the agreed disposition. Accordingly, CDCR properly seeks review of the September 2022 sentencing order, and its mandate petition was timely filed.

We must, therefore, decide whether a direct appeal of the September 2022 sentencing order constitutes an adequate remedy at law, and we

11

conclude that it does not. It is not clear who, if anyone, had the right to appeal the order allowing the withdrawal of the revocation petitions or the allegedly unlawful sentence. Because the September 2022 order was part of the plea agreement in the new criminal case, any appeal of the order would presumably have to be filed in, or accompanied by the filing of, an appeal from the judgment in which the plea was entered. And CDCR, at least, was not in a position to file that appeal.

CDCR is not a party to Escobedo's criminal case, and the general rule is that only parties to a criminal action may appeal. (*Crump v. Appellate Division of the Superior Court* (2019) 37 Cal.App.5th 222, 236 (*Crump*).) There is an exception when an order has an immediate, pecuniary, and substantial effect on a nonparty who is bound by the order. (*People v. Hernandez* (2009) 172 Cal.App.4th 715, 720.) But, although the sentencing order in Escobedo's criminal case substantially impacted CDCR, we see no immediate pecuniary effect that would justify applying the *Hernandez* exception.

The People are a party in the criminal case, but we reject Escobedo's contention that an appeal by the People provides CDCR with an adequate remedy. Escobedo cites several cases in which the People appealed final orders dismissing or otherwise disposing of a parole revocation petition that CDCR had filed. (*Perlas*, *supra*, 47 Cal.App.5th 826; *People v. Toussain* (2015) 240 Cal.App.4th 974; *People v. Johnson* (2020) 58 Cal.App.5th 363 (*Johnson*).)[1] But here, CDCR is not synonymous with the People, and this

---

[1] In *Johnson*, *supra*, 58 Cal.App.5th 363, another panel of this court reversed an order purporting to terminate the defendant's parole supervision, holding that the trial court did not have statutory authority to terminate parole supervision. While Escobedo characterizes *Johnson* as an appeal by CDCR, and the appealed ruling was a response to a petition for revocation

12

line of authority is inapposite. For one thing, the revocation petitions filed against Escobedo were withdrawn pursuant to the People's own motion, which implicates the rule that "[t]he People are ordinarily bound by their stipulations, concessions or representations." (*People v. Mendez* (1991) 234 Cal.App.3d 1773, 1783.) Moreover, withdrawal of the petitions was inextricably intertwined with the negotiated disposition to grant Escobedo probation, and the People may not appeal from an order granting probation. (See § 1238, subd. (d); *People v. Douglas* (1999) 20 Cal.4th 85, 93.) These facts, if they do not preclude an appeal by the People, at least demonstrate that the People's interests are not aligned with the interests of CDCR. We, thus, conclude that the first factor favors granting writ review, as we see no adequate means for CDCR to obtain relief through direct appeal.

We also doubt whether an appeal would provide CDCR with a sufficiently speedy resolution to constitute an adequate remedy. (See e.g., *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1296 [available remedy may be inadequate when "it is clear that [the] matter requires speedy resolution"].) CDCR's revocation petition and parole violation report contain fact-specific evidence tending to show that Escobedo poses a serious risk to public safety while on probation. Escobedo's only rejoinder is to argue that CDCR could simply expedite its appeal to get prompt review of the trial court's ruling, citing *People v. Loper* (2015) 60 Cal.4th 1155. But *Loper* confirms that the determination whether an appeal provides an aggrieved party with an adequate remedy depends on " 'the

---

filed by CDCR, the appeal itself was filed by the People on behalf of CDCR, as demonstrated by the case caption for the matter. Because the *Johnson* opinion reflects that the People were the appellant in that case, we deny CDCR's unnecessary request for judicial notice of the court docket in the *Johnson* appeal.

particular circumstances of that case.' " (*Id.* at p. 1167.) On the facts of this case, we conclude the need for a speedy resolution weighs at least modestly in favor of writ review. Potential harm to the public and potentially prejudicial impingement of CDCR's statutory authority are additional factors supportive of CDCR's request to decide this issue of first impression pursuant to a petition for a writ of mandate.

Finally, as we will see, Escobedo's attack on CDCR's standing to bring this challenge confirms our view that a mandate petition is appropriate here.

**B. CDCR Has Standing**

Escobedo contends CDCR has failed to establish it has standing to bring this mandate petition because it was not a party in Escobedo's criminal action, and it has no right to interfere with the prosecutor's discretion to control that proceeding. We are not persuaded by these arguments.

" 'A petitioner must have standing in order to invoke the power of a court to grant writ relief.' " (*Synergy Project Management, Inc. v. City and County of San Francisco* (2019) 33 Cal.App.5th 21, 30.) To establish standing under Code of Civil Procedure section 1086, the petition must be brought by a " 'party beneficially interested' " in the subject matter of the action. (*Synergy*, at p. 30.) "Even though the statute refers to a 'party,' however, 'it is well established that one who petitions for an extraordinary writ need not have been a party to the action below if the one seeking relief demonstrates a beneficial interest in the litigation or is affected by the outcome.' " (*Ibid.*) "To be 'beneficially interested,' a petitioner must generally have ' "some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." ' " (*Ibid.*) This interest must be " 'direct and substantial,' " requiring the

14

petitioner to demonstrate invasion of a legally protected interest. (*Id.* at pp. 30–31 [collecting cases].)

Here, the record shows that CDCR has a beneficial interest in the outcome of Escobedo's criminal case, given the fact that Escobedo was on lifetime parole when the trial court permitted the People to withdraw CDCR's revocation petition. The order sentencing Escobedo to probation, instead of remanding him to the custody of CDCR, has a direct, immediate, detrimental impact on CDCR's statutory authority and obligation to supervise lifetime parolees.

Escobedo cites *Crump*, *supra*, 37 Cal.App.5th 222, which reinforces our conclusion. In *Crump*, victims of a gas leak filed a writ petition seeking review of an order denying them restitution in an underlying criminal action against the gas company that failed to report the gas leak. The *Crump* court held the victims lacked standing to appeal the restitution order because they were not parties in the criminal action, but they did have standing to enforce their statutory right to restitution by seeking a writ of mandate. (*Id.* at pp. 240–242.) Indeed, the court held that an extraordinary writ proceeding "is particularly appropriate in circumstances where the person with the enforcement right is not a party to the proceeding." (*Id.* at p. 241.) So, too, here. CDCR was not a party to Escobedo's criminal action, but the September 2022 judgment and sentence directly affected CDCR's statutory authority to initiate a parole revocation proceeding and enforce the law pertaining to supervision of lifetime parolees.

Escobedo also cites *Dix v. Superior Court* (1991) 53 Cal.3d 442, which held that the victim of a defendant's crime did not have standing to file a petition for writ of mandate challenging an order to recall the defendant's sentence under former section 1170. In reaching this conclusion, the court

15

found, among other things, that "[n]either a crime victim nor any other member of the public has general standing to intervene in an ongoing criminal proceeding." (*Dix*, at p. 448; see pp. 450–451.) Thus, the court reasoned, "[e]xcept as specifically provided by law," a private citizen does not have a personal legal interest in the outcome of a criminal action filed against somebody else. (*Id*. at p. 451.) Relatedly, the court found, "the doctrine of 'public interest' standing" may not be invoked to "prevail over the public prosecutor's exclusive discretion in the conduct of criminal cases." (*Ibid*.)

In contrast to the petitioner in *Dix*, CDCR is not a private citizen and does not rely on public interest standing. It is a state agency with a direct and substantial interest in enforcing the legislative directive that it supervise parolees (§ 3000, subd. (a)), including by petitioning the court to revoke parole in an appropriate case. (See § 3000.08, subds. (d), (f) [on finding of good cause that parolee has committed a violation of law or parole conditions, if "intermediate sanctions . . . are not appropriate, the supervising parole agency shall . . . petition" court to revoke parole].) While the *Dix* petitioner had no legally recognized interest in the outcome of that criminal action, CDCR has a legal obligation, independent of the district attorney's, to file a petition to revoke parole in appropriate cases. This dual authority is an exception to the exclusive discretion a prosecutor usually enjoys in handling criminal cases, which distinguishes *Dix*.

Finally, Escobedo contends CDCR abandoned its objection to the withdrawal of its revocation petition and forfeited its right to appellate review "by choosing not to attend the sentencing hearing and object in person" to the entry of judgment in accordance with the negotiated plea. We agree with Escobedo that an email sent to the court may not be a proper way for a party to lodge an objection to an anticipated ruling. But CDCR was not

16

a party to Escobedo's criminal action and the apparent purpose of the parole agent's email was simply to remind the court (and the district attorney) of the governing law pertaining to lifetime parolees. Regardless, we conclude CDCR did not forfeit its right to bring this claim by failing to appear in Escobedo's criminal case. As a rule, the failure to raise an issue at the earliest opportunity results in forfeiture of a question in a later proceeding. (*Parmar v. Board of Equalization* (2011) 196 Cal.App.4th 705, 718.) But this rule does not apply "to 'noncurable defects of substance where the question is one of law,' or to 'matters involving the public interest or the due administration of justice. . . .'" (*City of Clovis v. County of Fresno* (2014) 222 Cal.App.4th 1469, 1477; see also *In re L.C.* (2023) 90 Cal.App.5th 728, 738.) Moreover, forfeiture can work against either party. (See e.g., *Guastello v. AIG Speciality Ins. Co.* (2021) 61 Cal.App.5th 97, 105.) And ironically, Escobedo has forfeited his forfeiture argument by failing to flesh it out more fully and place it under a separate heading in his brief. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 ["When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary"].)

Accordingly, we proceed to the merits of CDCR's petition.

## III. The Plea Bargain Was Unlawful

CDCR contends the People's plea bargain with Escobedo is unenforceable because the trial court was required by law to adjudicate the parole revocation petitions and remand Escobedo to the custody of CDCR. Escobedo disagrees, arguing that because the petitions were withdrawn, the prosecution was free to negotiate a disposition that did not require Escobedo's return to prison. As we shall explain, the trial court did not have the power to disregard section 3000.08(h) and sentence a lifetime parolee to probation.

17

Moreover, even if DDA Chavez had authority to withdraw the revocation petition filed by the district attorney, she did not have unilateral authority to withdraw CDCR's parole revocation petition. Accordingly, we conclude the plea agreement to sentence Escobedo to probation for his admitted violation of Penal Code section 422 is unlawful and unenforceable.

Plea bargaining has become an essential component of our criminal justice system, and plea bargains that have been approved by the court are generally enforceable under contract principles. (*People v. Renfro* (2004) 125 Cal.App.4th 223, 230 (*Renfro*).) "The prosecution and criminal court, however, do not have unfettered discretion in determining the subject matter of a plea bargain. The court must exercise its sentencing authority in accordance with the Penal Code, public policy, and decisional law," which means in this context that a "plea bargain is limited to 'powers legally available to' the court." (*Renfro*, at p. 230, quoting § 1192.5.)

Here, the trial court exceeded its legally available powers by placing a lifetime parolee on probation after finding he had committed a felony. As we have noted, section 3000.08(h) states that if a court determines a lifetime parolee has violated conditions of parole *or the law*, the parolee "shall" be remanded to the custody of CDCR and the jurisdiction of BPH. This remand is not optional, but follows ineluctably from the judicial finding that a lifetime parolee has committed a new offense. Parole is a statutorily mandated element of punishment, and neither the prosecution nor the sentencing court has authority to impose a prison sentence without parole or to alter the applicable period of parole established by the Legislature. (*Renfro*, *supra*, 125 Cal.App.4th at p. 232.) Simply stated, the "imposition and duration of a parole term is not a permissible subject of plea negotiations." (*Ibid.*) This legal principle has been consistently enforced by

18

California courts. (See e.g. *In re Moser* (1993) 6 Cal.4th 342, 357 ["the length of a parole term is *not* a permissible subject of plea negotiations"]; *People v. McMillion* (1992) 2 Cal.App.4th 1363, 1369 ["there is no legal mechanism for negotiating a plea agreement containing . . . reduced time on parole"]; *Berman v. Cate* (2010) 187 Cal.App.4th 885, 895 [specified parole term in a plea agreement is unenforceable]; *Renfro*, at p. 233 [same].)

Escobedo contends that section 3000.08(h) is inapplicable—and thus did not limit the trial court's authority to accept the plea agreement—because the petitions charging Escobedo with violating conditions of his parole were withdrawn before Escobedo entered his plea. According to this argument, section 3000.08(h) simply does not apply in the absence of a pending petition to revoke parole. Escobedo cites no authority supportive of this proposition, but he reasons that the statutory scheme contemplates a revocation petition must be pending in order for the court to revoke somebody's parole and remand the person to the custody of CDCR. We disagree.

Section 1203.2, subdivision (b)(1) expressly provides that the court may modify or revoke parole "[u]pon its own motion." Escobedo acknowledges this provision but deems it irrelevant since the trial court did not make a motion to revoke Escobedo's parole in this particular case. The pertinent fact, however, is that the Legislature has determined that a trial court's power to revoke parole is *not conditioned* on either the district attorney or CDCR filing a revocation petition. Further, revocation of parole is mandatory in the event a criminal defendant is convicted of any offense, even a misdemeanor, based on conduct he committed while on lifetime parole. (*Perlas, supra,* 47 Cal.App.5th at p. 836, citing § 3000.08(h).) And in the present case, there is no dispute that Escobedo was a lifetime parolee when he committed the acts that the court found were a felony violation of section 422. Although the

court's finding was based on a plea rather than evidence presented at a revocation hearing, we see no reason why that finding was insufficient to trigger application of section 3000.08(h) and the principle of *Perlas*, notwithstanding that the revocation petitions had ostensibly been withdrawn. If no revocation petition had ever been filed, section 1203.2, subdivision (b)(1) would have provided the court a procedural mechanism to comply with the statutory mandate.

The language of section 3000.08(h) is consistent with this analysis. Its requirement that a lifetime parolee, found to have committed a new offense, be remanded to the custody of CDCR is not conditioned on the filing or adjudication of any petition to revoke parole. Section 3000.08(h) codifies a legislative mandate that unequivocally requires, "[n]otwithstanding any other law," that the court remand a lifetime parolee in such circumstances. (§ 3000.08(h).) The provision requires no petition to revoke parole, and no court order adjudicating such a petition. Section 3000.08(h) mentions neither. Escobedo acknowledges that section 3000.08(h) carves out an exception to the range of consequences otherwise available under subdivision (f) of section 3000.08, when a lifetime parolee is the one found to have committed a parole violation. (See *Williams*, *supra*, 71 Cal.App.5th at p. 1040; *Perlas*, *supra*, 47 Cal.App.5th at p. 836.) But he contends, with no authority, that subdivision (h) lies dormant absent a formal revocation proceeding. We disagree. As with section 3000.08(h), nothing in subdivision (f) requires a pending petition before the court may revoke a person's parole. Subdivision (f) does require CDCR to file a revocation petition in certain circumstances, but it does not condition the court's power to revoke parole on any such petition. The court retains the power to revoke parole on its own motion if need be. (§ 1203.2, subd. (b)(1).)

20

But there is no need to deal in hypotheticals here.  Even if we were to credit the contention that section 3000.08(h) does not come into play unless a formal revocation petition is pending, we would reach the same conclusion in the present case.  Two such petitions were filed against Escobedo before he negotiated his plea bargain with the People.  Settled authority establishes that the court could not dismiss those petitions in the interests of justice pursuant to section 1385.  (*Wiley*, *supra*, 36 Cal.App.5th at p. 1068; *Williams*, *supra*, 71 Cal.App.5th at p. 1044.)  Because section 1385 refers to the dismissal of an "action," it has been found not to apply to parole revocation proceedings.  (*Wiley*, at p. 1068.)  These are not criminal actions, but special proceedings established by statute.  (*Perlas*, at pp. 831–832.)

We do not rule out the possibility that a workable distinction can be drawn between dismissing a revocation petition and allowing it to be withdrawn, but we know of no authority allowing a district attorney to withdraw a petition she did not file.  The statutory scheme for adjudicating parole violations confers no express right to withdraw a revocation petition, but neither does it expressly preclude withdrawing a petition.  In the face of this silence, Escobedo posits that the power to withdraw a revocation petition falls within the prosecution's discretionary authority to control criminal proceedings.  We reject this theory because, as noted, a parole revocation proceeding is not a criminal action to be prosecuted, but a special proceeding arising from an underlying prior conviction.  (*Wiley*, *supra*, 36 Cal.App.5th at pp. 1067–1068; *Perlas*, *supra*, 47 Cal.App.5th at pp. 831–832.)  And the Legislature has resolved that revocation petitions are *not* solely the responsibility of the district attorney, as a parole revocation proceeding can also be initiated by CDCR, or even on the trial court's own motion.  (§ 1203.2.)  If the district attorney were empowered to withdraw CDCR's petition without

21

CDCR's permission, this would undermine the Legislative scheme giving the two agencies independent authority to initiate revocation proceedings. Finally, as we have discussed, the law *requires* CDCR to file parole revocation petitions in specified circumstances (§ 3000.08, subd. (f)), which were present here. In a case where CDCR is required to file a parole revocation petition, we question whether anyone—CDCR or the district attorney—has authority simply to withdraw that petition. For all of these reasons we conclude that, even if DDA Chavez had authority to withdraw her own parole revocation petition, she had no authority to withdraw the petition that CDCR filed pursuant to its own statutory mandate.

Escobedo relies heavily on *Williams, supra*, 71 Cal.App.5th 1029 to argue otherwise. In that case, the district attorney filed both a complaint charging a lifetime parolee with two misdemeanors and a petition to revoke the defendant's parole. After a contested hearing on the revocation petition, the court determined the defendant had committed one of the charged offenses and remanded him to prison pursuant to section 3000.08(h). On appeal, the defendant argued the trial court erred by refusing to obtain a written report from CDCR before ruling on the revocation petition. Division One of this court agreed, applying the plain language of section 1203.2(b), which requires the trial court to obtain and review a written report from the parole agency before ruling on a parole revocation petition filed by the district attorney, making no exception for lifetime parolees. (*Williams*, at pp. 1039–1040; see also *People v. Zamudio* (2017) 12 Cal.App.5th 8, 15.)

Although *Williams* is not directly on point, one aspect of the appellate court's decision provides useful guidance. In that case, the People argued that although section 1203.2(b) generally requires courts to obtain a written report from the parole agency, that requirement should not apply to lifetime

22

parolees because the purpose of the report is to aid the court in deciding whether to impose an intermediate sanction, which simply is not an option when the violator is on lifetime parole. (*Williams*, *supra*, 71 Cal.App.5th at pp. 1042–1043.) The *Williams* court confirmed that "a trial court has no discretion to do anything but remand a lifetime parolee to prison once it finds that the person violated parole." (*Id.* at p. 1042, see also p. 1040.) But it found, among other things, that "even though the trial court may not dismiss a petition, or impose intermediate sanctions short of revoking parole, based on the parole agency's report," that report could potentially influence the prosecutor to withdraw his or her petition. (*Id.* at p. 1044.) The court reasoned that the district attorney could be prompted to reconsider its decision to file the revocation petition if the report disclosed, for example, that the parole agency would have imposed intermediate sanctions instead of requesting court intervention. (*Id.* at pp. 1044–1045.)

*Williams* supports the proposition that the district attorney has discretion to withdraw its own petition for revocation of parole based on information provided by the parole agency. By parity of reasoning, the district attorney might also have discretion to withdraw its own revocation petition in order to facilitate a plea agreement. (Cf. *People v. Vaesau* (2023) __ Cal.App.5th ___ [2023 Cal.App.Lexis 598] [district attorney must have legitimate basis for withdrawing a resentencing request].) But even if we assume that DDA Chavez had authority to withdraw the district attorney's petition, CDCR filed its own revocation petition against Escobedo, and that petition was supported by a CDCR report explaining the need for court intervention and a remand to state custody. *Williams* does not hold or intimate that the district attorney has discretion to withdraw a revocation petition that was filed by CDCR. And we conclude that because the statutory

23

scheme establishes parallel tracks for CDCR and the district attorney to file revocation petitions, *Williams* should not be read to support a district attorney exercising independent authority to withdraw a revocation petition that CDCR filed.

At oral argument before this court and in postargument letter briefs, Escobedo developed a new theory, that in this particular case CDCR delegated its authority to withdraw its revocation petition to the district attorney. Escobedo reasons that by failing separately to appear on the petition, CDCR permitted the district attorney to prosecute CDCR's petition, thereby ceding the power to withdraw that petition. We see several problems with this argument.

Escobedo cites no statute or document to support his contention that the district attorney was counsel of record on CDCR's petition here or, relatedly, that CDCR needs to appear through counsel after filing a statutorily mandated revocation petition. And there is a practical problem with requiring CDCR to appear at every hearing, a problem the Attorney General explains this way: already a parole agent or parole-agent supervisor appears in the Alameda County Superior Court for the weekly calendar where parole revocation petitions are heard, and parole agents should not need also "to appear at every criminal calendar in Alameda County to ensure prosecutors do not act ultra vires and withdraw a CDCR-initiated parole revocation petition without CDCR's permission."

Further, to the extent that the district attorney acted as counsel for CDCR under the facts presented here, we disagree with Escobedo that CDCR's counsel had unilateral authority to withdraw the revocation petition. Escobedo cites Code of Civil Procedure, section 283, which codifies the general rule authorizing an attorney to bind his or her client "in any of the

24

steps of an action or proceeding." However, this rule is subject to substantive limitations. For example, an attorney exceeds his or her authority by abdicating a substantial right of the client contrary to express instructions. (*Linsk v. Linsk* (1969) 70 Cal.2d 272, 278; see *Conservatorship of John L.* (2010) 48 Cal.4th 131, 156.) Here, Ms. Martin's email made clear that CDCR was of the view that both parole revocation petitions needed to be adjudicated and, if good cause was found, Escobedo needed to be remanded to the Board of Parole Hearings, so the district attorney knew it did not have CDCR's approval for the course of action it was pursuing.

Indeed, nothing in this record supports Escobedo's factual assertion that CDCR delegated or ceded its authority to enforce the parole revocation law. As soon as the parole-agent supervisor discovered the allegedly unlawful plea agreement, she notified both the district attorney and the court about the need to comply in this case with rules applicable to lifetime parolees who reoffend. Accordingly, we reject Escobedo's new theory that CDCR's nonappearance in the trial court authorized the district attorney to withdraw CDCR's petition.

We note, in closing, that "[d]efining offenses and prescribing punishments (mandatory or alternative choices) are legislative functions." (*People v. Navarro* (1972) 7 Cal.3d 248, 258.) When the court accepted Escobedo's plea, it implicitly found that Escobedo violated the law while on lifetime parole. The court then had no choice but to impose the consequence the Legislature has mandated in such circumstances. Notwithstanding the fact that the prosecutor purported to withdraw both revocation petitions, section 3000.08(h) required that Escobedo be returned to the custody of CDCR. The law simply does not authorize probation for a lifetime parolee who is found to have again violated the law, and therefore, neither the

25

prosecution nor the sentencing court had authority to accept a negotiated disposition that placed Escobedo on probation.  Accordingly, this court shall grant CDCR's petition for a writ of mandate.

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate the judgment and sentence in Escobedo's criminal action; vacate the order granting the People's motion to withdraw CDCR's petition to revoke Escobedo's parole; afford Escobedo the opportunity to withdraw his plea; and conduct further proceedings as may be appropriate and consistent with the views expressed herein.


                                        TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
PETROU, J.

*California Department of Corrections & Rehabilitation v. Superior Court* (*Escobedo*) (A166559)

Trial Court:       Alameda County Superior Court

Trial Judge:      Hon. Paul Delucchi

Counsel:          Rob Bonta, Attorney General, Phillip J. Lindsay, and Sara J. Romano, Senior Assistant Attorneys General, Brian C. Kinney, Supervising Deputy Attorney General, Michael G. Lagrama, and Kathleen R. Walton, Deputy Attorneys General for Petitioner

No appearance for Respondent

Jonathan Soglin, and Jeremy Price, under appointment by the Court of Appeal, for Real Party in Interest Robert L. Escobedo

No appearance for Real Party in Interest the People